[No. 2,908.]

# E. S. UTTER and M. E. CALDEN v. TRUMAN F. CHAPMAN.

BREACH OF CONTRACT TO FURNISH FREIGHT—MEASURE OF DAMAGES.—
Where a contract was made to furnish a steamboat with five hundred tons
of freight, at two dollars a ton, and the freight was not furnished: *held*,
that the measure of damages for such breach was not the difference between
the freight money and what the boat actually earned during the time it
would have taken to perform the contract, but the difference between the
net *profits* that would have been made under the contract and the net
*profits* which were or might, with reasonable diligence, have been made
during such time.

BURDEN OF PROOF TO REDUCE DAMAGES FOR BREACH OF CONTRACT.—
In an action for breach of contract to furnish freight to a steamboat, the
plaintiff is entitled to recover only the actual loss suffered from the breach;
but to show that such loss was less than the profits that would have been
made under the contract, the burden of proof is on the defendant.

ELEMENTS OF DAMAGE FOR FAILURE TO DELIVER FREIGHT.—A person
who contracts to deliver freight to a steamboat, and fails to do so, is liable
in damages for the actual loss thereby sustained by the steamboat; but he
·does not become a guarantor against any further loss, such as the boat may
sustain by reason of fruitless efforts to procure profitable employment.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

This was an action to recover damages for breach of a
contract, by which defendant agreed to furnish plaintiffs,
who were owners of the steamboat "Lark" and her barge,
with five hundred tons of grain, as freight, to be transported
from Paradise City, in Stanislaus County, to Stockton, at
two dollars per ton. A former appeal of the same cause
will be found reported in 38 Cal. 659. The material facts,
as found by the Court below, are stated in the opinion.
Defendant appealed.

*George A. Nourse,* for Appellant.

The Court below treated the case as if defendant had
guaranteed plaintiffs a certain amount of profit from running

their boat and barge a certain time. That is not the contract. Even if defendant had actually chartered plaintiffs' boat and barge for the three weeks, no such rule of damages could be adopted. The rule upon which the judgment of the Court below is based amounts to this: that if one agrees to furnish freight to a carrier, to be transported at a given rate, and fails so to do, and the carrier has a steamboat, on which he could have carried the freight, then the one contracting to furnish freight has that boat on his hands during the time it would have been carrying his freight, and must pay the same freight money as if he had actually had the freight carried for him, less only what such steamboat may happen to earn during such time. This will not do. What the steamboat may actually do in such case, during such time, is only important to reduce, in certain contingencies, the damages assessed under the rules of law.

The true measure of damages, as we understand it, is ordinarily the excess of the price to be paid under a contract for carrying freight over and above the cost of carriage, subject, however, to the qualification laid down in the former appeal in this action, that the freighter must, in case of such breach of contract, get other freight, if he can, and that the price received on such other freight must be deducted from the amount otherwise due as damages. But where, as in this case, there was a market price or ruling rate of freight, the measure of damages would be the excess of the contract price over the market price. (*Hale* v. *Trout,* 35 Cal. 229.) The market price or ruling rate, at the time defendant's grain was to have been transported, was two dollars and a half per ton, so that plaintiffs, instead of suing defendant for damages, ought to have been grateful to him for preventing them from carrying freight at less than the market rates.

*Terry & Carr,* for Respondents.

The trial of this case in the Court below was, as we contend, in exact conformity with the opinion of this Court, rendered on the former appeal. After the breach of contract by the defendant, the plaintiffs used every effort to procure employment from others. In order to procure such employment it was necessary to go with their boat to places where freight was, and it was necessary to keep the usual number of hands on the boat, so as to be able to transport such freight as offered, and to incur the reasonable expenditure required for this purpose; and when freight was offered, it was plaintiff's duty to receive and transport it; and the Court below found that the necessary expenses were the same that they would have been in performing the contract.

The true measure of damages was that adopted—the actual loss sustained by plaintiffs by reason of defendant's breach of contract, which is the difference between the actual earnings of plaintiffs' boat for the time required to perform the contract and what it would have earned if defendant had complied with his agreement.

By the Court, CROCKETT, J.:

The only question on this appeal relates to the measure of damages for the breach of a contract between the plaintiffs and defendant, whereby the latter agreed to furnish the former five hundred tons of grain, to be transported as freight, at the rate of two dollars per ton, by way of the river, from Paradise City to Stockton. The plaintiffs were the owners of a steamboat and barge, whereon the grain was intended to be shipped; and they applied to the defendant for the grain in due time, and offered to perform the contract on their part; but the defendant refused to deliver

CAL. REPS. XLIII—36

any of the grain, except eight tons. The Court finds that after their failure to obtain the grain, the plaintiffs employed their boat and barge in navigating the San Joaquin River and its tributaries during the time which would have been required to perform the contract with the defendant, and during that interval used all reasonable effort to procure employment for said boat and barge, but succeeded in obtaining freights to the value of only three hundred and forty-one dollars and eighty-four cents; and that, whilst so endeavoring to obtain freights, the expenses of the boat and barge were the same that they would have been in performing the contract with the defendant, if it had been performed.

When this case was here on a former appeal we endeavored to lay down a proper rule for the measure of damages on the new trial, which was ordered. On the second trial the Court below decided the measure of damages to be the contract price, to wit: one thousand dollars, less the earnings of the boat and barge, during the time which would have been required to perform the contract. Deducting the three hundred and forty-one dollars and eighty-four cents, earned by the boat and barge, from the one thousand dollars, it entered a judgment for the plaintiff for the remainder.

On the former appeal we held that the proper measure of damages was the difference between the contract price and what it would have cost the plaintiffs to perform the contract, less what the boat and barge actually earned, or might have earned, with reasonable diligence, during the time which would have been consumed in performing the contract. The Court finds that it would have required three weeks time to perform the contract, and that during that period the expenses of the boat and barge would have been forty dollars per day when running, and twenty-eight dollars per day when lying at the dock taking in or discharging

cargo. It is clear, therefore, if the contract had been performed that the plaintiffs' profits would have been the difference between the contract price of one thousand dollars and the expense of forty dollars per day when running, and twenty-eight dollars per day when lying at the dock. The findings further show if the contract had been performed the boat and barge, while so employed, would have been running about three fourths of the time, and would have been lying at the dock, whilst taking in and discharging cargo, about one fourth of the time. Calculating the cost of performing the contract at this rate, it would have amounted to seven hundred and seventy-seven dollars, leaving as profit, on a full performance of the contract, the sum of two hundred and twenty-three dollars. But, as we held on the former appeal, there must be deducted from this sum whatever amount the boat and barge actually earned, or might, with reasonable diligence, have earned, during the time required to perform the contract. It appears from the findings that they, in fact, earned three hundred and forty-one dollars and eighty-four cents; but in earning this sum, and in a reasonable effort to earn other sums (which efforts, as we have heretofore decided, it was their duty to make), the plaintiffs have incurred an expense of seven hundred and seventy-seven dollars. Deducting the sum earned from the expenses, and it leaves an excess of expenses over earnings of four hundred and thirty-five dollars and sixteen cents. The only serious question in the case is whether the defendant should be charged with this excess of expenses over the earnings of the boat and barge. If this question be answered in the affirmative, the judgment ought to have been for this sum, and for two hundred and twenty-three dollars, the profit which the plaintiffs would have made by performing the contract, making in the aggregate the sum of six hundred and fifty-eight dollars and sixteen cents. On the other hand, if the defendant is not liable

for these expenses, the judgment should have been for the profits only (two hundred and twenty-three dollars.) The correct interpretation of our decision on the former appeal is that the plaintiffs are entitled to recover only the actual loss which they suffered from the breach of the contract; and if it appeared that during the space of time which would have been requisite for the performance of the contract by them they had, or by the use of reasonable diligence might have realized a profit from the use of the boat and barge equal to or exceeding the profit which they would have made by performing the contract, in that event they would have suffered no loss, and would have been entitled to nominal damages only. The burden of proof was on the defendant to show that the boat and barge had, or might have realized a profit, and if the net earnings did not equal or exceed the profit which the plaintiffs would have made by performing the contract, then such net earnings would reduce, *pro tanto*, the amount of plaintiffs' loss.

But we did not decide, nor intend to intimate, that the defendant stood in the relation of a guarantor, incurring the hazard of whatever loss the plaintiffs might sustain by reason of a fruitless effort to obtain a profitable employment for the boat and barge. It was incumbent on the defendant to show, if he could, that a profit had been or might have been realized by the boat and barge; and, failing in this, the only result would have been that the plaintiffs would have recovered the difference between the contract price and the cost of performing the contract. But if a person should charter a ship for a number of months, or for a long voyage, and should, immediately thereafter, repudiate the contract and refuse to perform it, no one, I apprehend, would seriously contend that the owner could send the vessel on a long and expensive voyage, in a fruitless effort to obtain profitable employment for her during the term of the charter party, without the consent of the charterer, and thereby fasten

upon the latter the whole expense of the voyage. In such a case the proper measure of damages would be the difference between the contract price and the cost which the owner would have incurred if the contract had been performed, subject only to such a reduction as the charterer would have been entitled to on his proving affirmatively that the ship had, or might by a reasonable effort have earned a *profit* during the term of the charter party. I am, therefore, of opinion that the defendant is not chargeable with the loss incurred by the plaintiffs whilst seeking for employment for the boat and barge, and that the plaintiffs are entitled to recover only the profits they would have realized by performing the contract, viz: the sum of two hundred and twenty-three dollars in gold coin.

Judgment reversed and cause remanded, with an order to the Court below to enter judgment for the plaintiffs for two hundred and twenty-three dollars in United States gold coin.

Mr. Justice WALLACE dissented.

Mr. Chief Justice SPRAGUE did not participate in the foregoing decision.