### CORNWALL et al. v. J. J. MOORE & CO.

(District Court, N. D. California. October 29, 1903.)

No. 12,619.

1. SHIPPING—CONSTRUCTION OF CHARTER—OPTION OF CHARTERER TO CANCEL.
   A charter party contained the following provision: "Captain to furnish charterers a certificate from charterers' marine surveyor (at San Francisco) that the vessel is in proper condition for the voyage. Should the vessel fail to pass a satisfactory survey this charter to be void at charterers' option." *Held*, that such provision was for the purpose of determining the seaworthiness of the vessel for the voyage in hull and equipment, and that the charterers could exercise the option given to cancel the charter only on an adverse report of their surveyor after an actual survey, which it was incumbent on them to have made unless prevented by the fault of the owners.

2. SAME—SEAWORTHINESS OF VESSEL—DUTY OF CHARTERER TO MAKE SURVEY.
   Neither the age of a vessel, nor the length of time she had been upon her copper, nor the fact that owing to her age insurance could not be obtained on the cargo intended to be shipped by the charterers, establishes that she was in fact unseaworthy for the voyage, so as to authorize the charterers' surveyor to so certify and entitle the charterers to cancel the charter, where it provided for a certificate to be made on an actual survey.

3. SAME—BREACH OF CHARTER—MEASURE OF DAMAGES.
   The measure of damages for a total breach of a charter by the charterer by refusing to accept the vessel is the net amount that would have been earned by the vessel under the charter, less the net amount earned, or which might with reasonable diligence have been earned during the time required for the making of the voyage under the charter.

In Admiralty. Action for damages for breach of charter.

Monroe & Cornwall, for libelants.
Nathan H. Frank, for respondent.

DE HAVEN, District Judge. This is a libel in personam to recover damages from the defendant, a corporation, for the alleged breach of a charter party by the terms of which the defendant chartered the whole of the ship Spartan, "with the exception of the cabin and necessary room for the crew and the stowage of provisions, sails, and cables," for a voyage from San Francisco to Australia; the defendant agreeing to provide and furnish the said vessel with "a full and complete cargo of Grain, Lumber and/or other lawful merchan-

dise." The charter party contains the following, among other, provisions:

"The said vessel shall be tight, staunch, strong and in every way fitted and provided for said voyage. * * * Captain to furnish Charterers a certificate from Charterers' Marine Surveyor (at San Francisco) that the vessel is in proper condition for the voyage. Should the vessel fail to pass a satisfactory survey, this Charter to be void at Charterers' option. Vessel to dunnage and ballast sufficient for the proper care and loading of the aforesaid cargo, and to be stowed under the Captain's supervision and direction."

A few days after the execution of the charter, the defendant was notified by the libelants that the Spartan was ready to take on cargo. In reply the defendant, on January 24, 1902, in a letter addressed to the ship's managing owner, said:

"We beg to notify you that our Surveyor, Captain Perriman informs us that the vessel has got considerably more ballast in her than is necessary for the freighting of the cargo which will go in the ship, consequently she is not ready to commence receiving cargo under the conditions of the charterparty. We also understand from Captain Perriman as well as Captain Polite, master of the ship, that water was found on the 'transom' on her last voyage, indicating a leak in the ship and that although the vessel was docked to find this leak it was not found. In as much as the vessel will carry perishable cargo it will be necessary for us to have a certificate that the vessel is in first class order and condition, and in as much as we have cargo waiting for the ship and want to commence loading her, we must ask you to give this important matter your immediate attention."

The libelants replied to this on the following day, stating that there was no more ballast in the ship than in the judgment of her master was necessary for her safety in carrying such cargo as could reasonably be offered under the terms of the charter party, but at the same time they requested a written statement of the cargo to be loaded, so that it might intelligently be determined by surveyors how much ballast was required, and added that:

"If the ballast now in her hold is considered by them to be more than necessary, the surplus shall be taken out and the ship turned over to your company to be loaded in accordance with your cargo statement and the judgment of the surveyors. It is not true that there is or has been a leak in the ship; neither is it true that the vessel was docked for the purpose of finding a leak."

On January 27, 1902, the libelants requested the defendant's surveyor to go with two surveyors selected by them and make a survey of the vessel. This he refused to do, and the surveyors selected by the libelants, having previously secured from the defendant's clerk an unsigned pencil memorandum of the proposed cargo, made a survey, and certified that in their judgment the vessel was seaworthy and well fitted for the voyage named in the charter. The defendant was informed of the result of this survey, and after some further correspondence between the parties, not necessary to be here set out, the defendant, on January 29, 1902, gave notice to the libelants that because of their failure to furnish "a certificate from Charterers' Marine Surveyor at San Francisco, that the vessel is in proper condition for her proposed voyage, as provided in the charter-party," the defendant availed itself of the option contained therein to consider the charter party

void and to declare the same accordingly canceled. On the next day the libelants again made demand upon the defendant's surveyor for the certificate called for in the charter party, and in making the demand said, "For the purpose of making any examination necessary to the issuance of said certificate herein demanded you are hereby granted free access to said ship Spartan and to all her parts." It may be here stated that the defendant's surveyor never made any survey of the vessel, and at the trial testified that he was unable to do so because of the ballast which was then in the vessel, and that the master refused to remove the same; but I am unable to accept this statement as true. The letters of the defendant contain no intimation that the survey could not be made until the vessel's ballast was removed, and it is clear from the evidence that the only controversy about the removal of ballast was in relation to the amount which the ship ought to carry upon the voyage. The defendant's surveyor did not at any time notify the libelants or the master of the vessel that he was ready to make a survey when the ballasting in the ship should be removed, or that it was necessary this should be done in order to enable him to make the survey; and, placing the most favorable construction upon his action, it may be said that his refusal to make the survey and give the certificate required by the charter was because of the difference in the opinions held by himself and her master as to the amount of ballast to be carried, and upon consideration also of the vessel's age and the length of time she had been upon her copper, making it difficult, if not impossible, to obtain insurance upon her cargo, and the further fact that he had been told she had sand in her limbers. My conclusion from the evidence is that the libelants did nothing to prevent, but on the contrary made reasonable efforts to secure, the survey contemplated by the charter.

1. In view of the foregoing statement of facts, was the defendant justified in declaring the charter party canceled? The provision upon which the defendant relies for such justification is as follows:

"Captain to furnish Charterers a certificate from Charterers' Marine Surveyor (at San Francisco) that the vessel is in proper condition for the voyage. Should the vessel fail to pass a satisfactory survey, this Charter to be void at Charterers' option."

The survey here referred to is one which was to be made for the purpose of ascertaining whether the vessel was seaworthy in hull and equipment when tendered for the reception of cargo under the charter. The clause was inserted in the charter for the purpose of providing for the settlement of any dispute which might arise between the libelants and defendant as to the seaworthy condition of the vessel in hull and equipment. It was for the benefit of the defendant, and gave to it the option of declaring the charter void, if after a proper survey the vessel was not in the judgment of its surveyor deemed seaworthy in these respects, and if the defendant desired to insist upon compliance with this stipulation it was incumbent upon it to select its surveyor and cause him to make the survey contemplated. In the absence of such a survey and the adverse judgment of the surveyor thereon as to the seaworthiness of the vessel, the defendant had no right to declare the charter void, unless the failure to make the survey

was caused by the fault of the libelants. In the case of Herrick v. Belknap's Estate, 27 Vt. 673, the court, in the opinion delivered by Redfield, Ch. J., said:

"This being a bill brought to obtain payment for work done on the Vermont Central Railroad beyond or aside of the estimates .of the engineers, and the contract by which the company let the work to Belknap, and also that by which he underlet a portion of it to the plaintiff, containing a provision in these words, 'and the engineer shall be the sole judge of the quality and quantity of the work, and from this decision there shall be no appeal,' the recovery can scarcely be claimed upon any other but one of two grounds: (1) That the engineers, without the fault of the plaintiff, have failed to make an estimate within the fair import of the contract; or (2) that, having made one, it is so erroneous as not to be binding upon the parties under the contract. * * * But, this being a peculiar species of contract, so far as the umpirage is concerned, that being referred to the agents and servants of one of the contracting parties, persons in the employ, under the control, and in the pay of that party, it seems from necessary implication to impose upon that party the obligation to employ competent, upright, trustworthy persons, in this service, and to see to it that they did this service in the proper time, and in the proper manner."

In Smith v. Boston, Concord & Maryland Railroad, 36 N. H. 458, it is said:

"So where it is agreed that the work shall be done under the superintendence of an engineer, that he shall measure, etc., there is an implied agreement on the part of the employer that a suitable engineer shall be employed, and that he shall do all that the contract requires to be done by him in due season, and an action will lie against the party who neglects to furnish such engineer. * * * And the party who does or should employ him can take no advantage of any failure on the part of the engineer to do anything required by the contract."

The case of McMahon v. The New York and Erie R. R. Co., 20 N. Y. 463, may also be cited as an authority for the same proposition. That was an action which arose under a contract for the construction of a railroad, by which all measurements were to be made and the amount of labor determined by the defendant's engineer, whose decision was to be final. Ex parte measurements were made by the engineer which were not satisfactory to the plaintiff, and he thereupon requested the defendant to have other measurements made, and this request was refused. The court held that the measurements made by the engineer at a time when the plaintiff was not present were not such as were contemplated by the contract, and that the plaintiff had done all that was incumbent upon him when he requested that other measurements should be made. In its discussion of the question the court said:

"This was all, I think, that it was incumbent upon the contractor to do. The engineer was entirely under the control of the company, subject to its order and removal by its will; and after the company had absolutely refused to direct him to make an estimate, or to review what he had already made, it would have been useless for the contractor to apply to him, and I think he was under no obligation to do so. The referee was justified, therefore, in considering the amount of the work an open question, to be determined upon the proof at large."

So here, it was the duty of the defendant to cause its marine surveyor to make a survey of the Spartan when the request for such survey was made by the libelants, and, as it did not do so, the de-

fendant had no right to declare the charter party canceled because of the failure of the libelants to furnish it with a certificate from such surveyor that the vessel was in a proper condition for the voyage. The libelants, in requesting the survey to be made, did all they could reasonably be required to do in the premises, and were not in default. It is said, however, that the defendant's marine surveyor acted in good faith in refusing to make the survey, and declined to give the required certificate because in his judgment the vessel was not seaworthy, and that by the terms of the charter party, his judgment having been honestly exercised, was conclusive as to that fact, and justified the defendant in declaring the agreement canceled. The answer to this suggestion is that the charter contemplated an actual survey of the vessel by the defendant's marine surveyor; that is, an inspection accompanied by the usual and necessary tests to enable him to form an intelligent opinion as to her seaworthiness, and without such survey he was not authorized to pronounce the vessel unseaworthy and refuse the certificate called for by the charter. He had no right to act upon mere hearsay as to the condition of the ship's limbers. Spencer v. Duplan Silk Co. (C. C.) 112 Fed. 638. Nor was he justified, without a survey, in refusing the certificate because of her age or the length of time she had been upon her copper, nor by reason of any arbitrary rule of the insurance companies not to insure perishable cargoes carried by wooden vessels of her age. All of the expert witnesses, including the defendant's surveyor, testified that the age of the vessel and the length of time she had been upon her metal would not conclusively show that she was not in fact seaworthy, and that the actual fact could only be determined by a survey. It follows from what has been said that if the Spartan was in fact seaworthy the libelants are entitled to recover the actual damages sustained by them because of defendant's refusal to furnish her with a cargo as provided in the charter. The argument against her seaworthiness is based entirely upon the facts that she was to carry a cargo of grain, that she is a wooden vessel, and at the date of the charter was 28 years of age and had been upon her metal for 8 years; and the further fact, shown by the evidence, that insurance could not have been obtained upon a cargo of grain carried by a wooden vessel of that age upon the voyage for which she was chartered. It does not, however, necessarily follow from these facts that the Spartan was not seaworthy with respect to the cargo and voyage contemplated; and, upon consideration of the evidence of the witnesses who inspected her and testified as to her actual condition, I am satisfied that she was in fact seaworthy, and able to perform all that she was required to do by the charter party. The case will be referred to the commissioner to take and report the testimony in relation to the damages sustained by the libelants, together with his findings thereon. In ascertaining the amount of damages the commissioner will be governed by the rule approved in Leblond v. McNear (D. C.) 104 Fed. 826, and there stated in this language:

"The measure of damages in this class of actions seems to be well settled. In an action against the charterer of a ship for a total breach of his contract, the measure of damages is the net amount that would have been

earned by the vessel under the charter sued on. less the net amount earned, or which might with reasonable diligence have been earned, by the vessel during the time required for the performance of the voyage named in such contract of charter. Smith v. McGuire, 3 Hurl. & N. 554; Utter v. Chapman, 38 Cal. 659; Id., 43 Cal. 279; Ashburner v. Balchen, 7 N. Y. 262; Dean v. Ritter, 18 Mo. 182; Steamship Co. v. Card (D. C.) 59 Fed. 159, 3 Suth. Dam. pp. 179–181."

Let a decree be entered in accordance with the foregoing opinion.