### CORNWALL et al. v. J. J. MOORE & CO.

#### (District Court, N. D. California. October 24, 1904.)

#### No. 12,619.

1. SHIPPING—BREACH OF CHARTER—DAMAGES.

The law imposes upon a charterer who has without justification refused to accept the vessel the burden of proving in mitigation of damages that the owner could with reasonable diligence have reduced or prevented the loss or damage occasioned by his breach of the contract.

2. SAME—DUTY OF VESSEL TO ACCEPT OTHER EMPLOYMENT.

Where a charterer without justification refuses to accept the vessel when tendered for loading, the owner is not bound to accept such renunciation of the contract, but may at his option treat it as still in force; and in such case he is not required to accept other employment for the vessel until the lay days for loading allowed by the charter have expired, and there has been an actual breach of the contract by the charterer.

In Admiralty. Action for breach of charter.
See 125 Fed. 646.

Monroe & Cornwall, for libelants.
Nathan H. Frank, for respondent.

DE HAVEN, District Judge. The ship Spartan was chartered to the defendant, a corporation, on January 16, 1902, to carry a cargo of grain, lumber, or other merchandise from San Francisco, the vessel's home port, to Sydney or Melbourne, as the defendant should elect. The charter provided for 14 lay days, to commence 24 hours after the vessel was at the dock ready to receive the cargo, and also contained the following provision:

"Captain to furnish charterers a certificate from charterers' marine surveyor (at San Francisco) that the vessel is in proper condition for the voyage. Should the vessel fail to pass a satisfactory survey, this charter to be void at charterers' option."

On January 29, 1902, the libelants notified the defendant that the Spartan would be ready to receive cargo at 9 o'clock in the forenoon of the next day. In reply, the defendant on the same day addressed to the libelants the following letter:

"We beg to acknowledge the receipt of your favor of even date, from which we perceive that you decline to accede to the suggestion contained in ours of yesterday. Inasmuch, therefore, as you have failed to furnish us with a certificate from charterers' marine surveyor at San Francisco, that the vessel is in proper condition for her proposed voyage, as provided in the charter party, we beg to notify you that we avail ourselves of the option therein contained, to consider the charter party void, and the same is accordingly cancelled."

The Spartan's managing owner replied to this letter on January 30th, saying:

"As to your statement in your favor of the 29th inst., as follows: 'We avail ourselves of the option therein (charter party) contained to consider the charter party void, and the same is accordingly cancelled,' I beg to state that I refuse to admit, but deny, that the said charter party is cancelled, or void, and I refuse to admit, but deny, that under such charter party and the facts as they exist, you have, or ever had any option to consider the said charter party void or cancelled, or otherwise than in full force and effect, and I hereby respectfully notify you that I consider the said charter party to be in full force and effect and uncancelled, and will abide by and live up to said charter party and all its terms, and expect you to do the same."

On the same day the libelants received from a ship broker the following written offer, which the testimony shows was sent at the suggestion of the defendant and on its behalf:

"Mr. Moore informed us this afternoon he had cancelled charter party of the ship to Melbourne, etc. We can make you a firm offer on her from Puget Sound as follows: 40S. Sidney 48/9 Melbourne N. W. F. with 20 days for loading and custom of the port for discharge. All other terms per usual lumber C. P. There is also business to be had for China and West Coast, but must have refusals."

The Spartan's managing owner, acting for the libelants, replied to this offer on February 1st, saying:

"You are mistaken in believing that the charter party with J. J. Moore & Company has been cancelled. The charter is still in full force and effect and the lay days are counting against J. J. Moore & Company, one of them having passed. Under these circumstances there is no necessity of considering any further charter at present for the ship Spartan. Should it later appear that J. J. Moore & Company desire to break and do break the agreement of charter for the ship Spartan I will then, of course, consider any further

offers for a new charter in order that the amount of damage in the matter may not be unnecessarily increased."

Upon the trial of the case the court found that the defendant, in refusing to load the Spartan, was guilty of a breach of the charter party, and the case was referred to a United States commissioner to ascertain and report the amount of damages sustained by libelants.   125 Fed. 646.   Upon the hearing before the commissioner the parties entered into the following stipulation:

"It is agreed that if the vessel had sailed upon the voyage provided for in the charter party, the profits to her on that voyage would have been three thousand six hundred sixty-two and 91/100 dollars ($3662.91).   It is understood that this leaves open the question whether or not the libelants are entitled to any damages whatsoever, under the evidence as already introduced; it being the contention of the respondent that the alleged failure to seek and obtain other employment, or accept other employment offered to them, during said term, deprives them of the right of such recovery.   This question is to be referred to the court for decision."

1. In the former opinion in this case, 125 Fed. 646, it was said, quoting the language used in Leblond v. McNear (D. C.) 104 Fed. 826:

"The measure of damages in this class of actions seems to be well settled. In an action against the charterer of a ship for a total breach of his contract, the measure of damages is the net amount that would have been earned by the vessel under the charter sued on, less the net amount earned, or which might with reasonable diligence have been earned, by the vessel during the time required for the performance of the voyage named in such contract of charter.   Smith v. McGuire, 5 Hurl. & N. 544;   Utter v. Chapman, 38 Cal. 659; Id., 43 Cal. 279;   Ashburner v. Balchen, 7 N. Y. 262;   Dean v. Ritter, 18 Mo. 182;   Steamship Co. v. Card (D. C.) 59 Fed. 159;   3 Uth. Dam. pp. 179–181."

This rule, in so far as it provides for the mitigation of damages in an action of this character, is based upon the principle that, if a party entitled to the benefit of a contract can with reasonable exertions protect himself from loss arising from a breach, it is his legal duty to do so. Heckscher v. McCrea, 24 Wend. 304.   But in the application of this rule the law imposes upon a defendant guilty of a breach of contract the burden of proving in mitigation of damages that the other party could with reasonable diligence have reduced or prevented the damage occasioned by such breach.   Costigan v. Mohawk & H. R. R. Co., 2 Denio, 609, 43 Am. Dec. 758;   Hamilton v. McPherson, 28 N. Y. 72, 84 Am. Dec. 330; Utter v. Chapman, 43 Cal. 279.   There is no evidence that the libelants refused any offer of employment other than the one above referred to, or that, having refused it, they could at any time with reasonable diligence have obtained other employment for the Spartan during all or any portion of the time which would have been required for the performance of the charter, and so it is only necessary to consider whether it was the duty of the libelants to have accepted that offer to have thus protected themselves against some portion of the loss growing out of the subsequent action of the defendant in not loading the vessel under the charter.

It will be seen from the foregoing statement of facts that when the defendant gave notice of its refusal to abide by the charter party the lay days had not expired, and therefore the time for the performance of the contract upon the part of the defendant had not yet arrived.   The

question is thus sharply presented whether the mere notice by the defendant at that time of its intention not to perform the contract imposed upon the libelants the duty of accepting other employment for their vessel immediately, or did they have the right to wait until the expiration of the lay days before seeking or accepting other employment for the vessel? Upon both principle and authority it would seem that the libelants had the right to refuse other employment for the Spartan until after the expiration of her lay days under the charter. There was no actual breach of the charter by the defendant until after the expiration of the lay days therein provided for, and until such breach there was no obligation upon the part of the libelants to seek other employment, unless they elected to treat the repudiation of the charter by the defendant as a discharge of their own obligations thereunder. In Kadish v. Young, 108 Ill. 170, 43 Am. Rep. 548, an action to recover damages for breach of contract for the future delivery of barley, it was held that the buyer could not, by giving notice before the time of delivery that he would not accept such delivery, impose upon the seller the obligation to resell the barley before the time mentioned in the contract for delivery, or take other steps to protect himself from damage. In Hochster v. De La Tour, 2 Ellis & Black. (75 E. C. L.) 678, Lord Campbell, C. J., in delivering the opinion of the court, said:

"The man who wrongfully renounces a contract into which he had deliberately entered cannot justly complain if he is immediately sued for a compensation in damages by the man whom he has injured, and it seems reasonable to allow an option to the injured party either to sue immediately, or to wait till the time when the act was to be done, still holding it as prospectively binding for the exercise of this option, which may be advantageous to the innocent party, and cannot be prejudicial to the wrongdoer."

Avery v. Bowden, 5 Ellis & Black. (85 E. C. L.) 714, is also in point. The facts of that case are thus stated in the headnotes:

"By charter party, defendant agreed to load a cargo on plaintiff's ship at Odessa. To a count for not loading, defendant pleaded that, before cause of action arose, war was declared between Russia and Great Britain, which rescinded the contract. It appeared that after the ship had arrived, and before the declaration of war, defendant's agent had repeatedly told the master that he, the agent, had no cargo for the ship, and that he had better go away.; but the master continued to require a cargo till the declaration of war was known at Odessa, which was before the ship's laying days had expired. Held, that the refusal of the agent before the time for loading had expired, not being acted on as a renunciation of the contract, was not a cause of action, and that the plea was therefore proved."

In the opinion of the court in that case, delivered by Lord Campbell, C. J., it was said:

"According to our decision of Hochster v. De La Tour, 2 E. & B. (75 E. C. L.) 678, to which we adhere, if the defendant, within the running days before the declaration of war, had positively informed the captain of the Lebanon that no cargo had been provided or would be provided for him at Odessa, and that there was no use in his remaining there any longer, the captain might have treated this as a breach and renunciation of the contract, and thereupon, sailing away from Odessa, he might have loaded a cargo at a friendly port from another person; thereupon the plaintiff would have had a right to maintain an action on the charter party to recover damages equal to the loss he had sustained from the breach of contract on the part of the defendant. The language used by the defendant's agent before the declaration of war can hardly be construed as amounting to a renunciation of the

contract, but, if it had been much stronger, we conceive that it would not be considered as constituting a cause of action after the captain still continued to insist upon having a cargo in the fulfillment of the charter party."

In Howard v. Daly, 61 N. Y. 362, 19 Am. Rep. 285, it was held that when a party to a contract, before the time when by its terms he is required to perform, renounces the obligation of his contract, "the opposite party has an option either to treat the contract as subsisting, and, when the day arrives for commencing to serve, to offer to perform, or to regard it as immediately broken and to sue before the day arrives. This theory of an option is not objectionable, since, before the day for performance arrives, a party would not be bound to accept other employment, if offered, as he would be if the contract were broken off after that time" In support of this conclusion, the court quotes with approval the following language of Cockburn, C. J., in Frost v. Knight, L. R. 7 Exch. 111, 1 Eng. Rep. 218, in discussing the effect of a notice of intention not to perform a contract, when given before the time for performance has arrived:

"The promisee, if he pleases, may treat the notice of intention as inoperative and await the time when the contract is to be executed, and then hold the other party responsible for all the consequences of nonperformance; but in that case he keeps the contract alive for the benefit of the other party, as well as his own. He remains subject to all his own obligations and liabilities under it, and enables the other party not only to complete the contract, if so advised, notwithstanding his previous repudiation of it, but also to take advantage of any supervening circumstances which would justify him in declining to complete it."

It is undisputed in this case that, when notified by the defendant of its intention not to comply with the terms of the charter party, the libelants refused to accept such notice as a termination of the contract, and at once replied that they would hold themselves bound by all of its obligations and insist upon its full performance by the defendant. In taking this position they only exercised their legal right, and, having thus elected "to keep the contract alive" for the benefit of the defendant as well as for themselves, they were not, under the rule announced in the foregoing cases, required to accept the offer to dispatch the Spartan to Puget Sound for a cargo at the time when that offer was made. They had the legal right to wait until the time for the performance of the contract had arrived before accepting other employment for the vessel, and, as there is no evidence that they refused any offer of cargo after the expiration of the lay days, or that with reasonable diligence they could after that time have obtained other employment for the Spartan, the libelants are entitled to recover as damages the net amount which would have been earned by the vessel under the charter, if the same had been fully performed by her.

It is claimed by the libelants that, under the rule requiring them to use reasonable efforts to mitigate their damages, they were not bound to accept or seek for a cargo to be loaded at a port so far distant from that of San Francisco as is Puget Sound, and that upon this ground also they had the legal right to reject the offer to proceed to Puget Sound for a cargo. The conclusion that the libelants were under no legal obligation to accept this offer, because it was made before the expiration of the lay days, renders it unnecessary to consider this contention.

Let a decree be entered in favor of the libelants for the sum of $3,662.91, with interest from the date of the filing of the libel, and for costs.