[Civ. No. 2233.  Second Appellate District.—June 8, 1917.]

CORNELIUS COLE, Respondent, v. MERCHANTS' TRUST
COMPANY (a Corporation), Defendant and Appellant;
BASIL H. DE JERSEY, Intervener and Appellant;
F. W. ARMITAGE, Defendant.

CONTRACT—AGENCY FOR SALE OF LOTS—DURATION OF AGENCY—EFFECT
OF EXECUTION OF SUBSEQUENT TRUST AGREEMENT—TIME OF ES-
SENCE PROVISION NOT DISTURBED BY.—In a contract giving an ex-
clusive agency for the sale of certain lots for the period of eighteen
months, and providing that the agent should receive as compensa-
tion ten per cent of the selling price of each lot, and after the
owner should have received $250 on the sale of a lot, the balance
should be paid to the agent, and that when the owner had received
$27,640 from the sale of all the lots, he should transfer to the
agent all unpaid contracts and unsold lots, the provision of the
contract making time of the essence was not disturbed by the mak-
ing of a new agreement between the parties and a trust company
under which the company was to deliver contracts and deeds and
make collections and pay all except ten per cent on each lot to
the owner until he received the balance due him, in view of the
further provision declaring that it was intended by the agreement
to carry out the contract as modified by extending its life to a
stated date.

ID.—AMOUNT OF SALES—UNAUTHORIZED DEDUCTIONS.—In determining
whether the agent had sold a sufficient number of lots prior to the
extended date to yield the aggregate sum due the owner, the owner
is not entitled to have excluded moneys expended for street work,
after such date, or for subsequently accrued taxes.

APPEALS from a judgment of the Superior Court of Los
Angeles County, and from orders denying a new trial.   Frank
G. Finlayson, Judge.

The facts are stated in the opinion of the court.

Hunsaker & Britt, W. W. Middlecoff, Joseph L. Lewinsohn,
and W. N. Goodwin, for Intervener and Appellant.

Benjamin E. Page, Arthur C. Hurt, and Arthur F. Coe,
for Defendant and Appellant.

M. O. Graves, C. C. Brown, Haas & Dunnigan, and Cornelius
Cole, *in pro. per.*, for Respondent.

Hunsaker & Harris, for Defendant F. W. Armitage.

WORKS, J., *pro tem.*—These are appeals from the judg-
ment and from an order denying motions for a new trial.

By an agreement in writing, of date February 1, 1905, the
respondent granted to the defendant Armitage and others,
for the period of eighteen months, an exclusive agency for the
sale of a certain tract of land.   At a later date the rights of
all the grantees of the agency were lodged in Armitage by
assignment.   For that reason, as well as for convenience, the
contract will be referred to as if it had been entered into, on
the one part, by Armitage alone.   The instrument provided,
among other things, that Cole should forthwith subdivide
the property; that he should subscribe a certain map delineat-
ing the subdivision and dedicate to public use all streets and
alleys shown on it; that he should grade and gravel certain
streets and sidewalks in the tract; that he should execute and
deliver contracts for the conveyance of lots upon sales being
made by Armitage; and that he should execute and deliver to
purchasers deeds to lots upon the payment to him of $250
for each and every lot to be conveyed.   Armitage was to forth-
with advertise the lots for sale, maintain a sales office on or
near them, and otherwise use due diligence to complete the
sale of all the lots during the life of the agreement; was to pay
all cost of subdividing the lots, of filing and recording the map,
and of all certificates of title to the lots; was not to sell any
lot for less than $250, nor upon time at a less rate than
$25 at the time of sale and ten dollars per month, with
interest at seven per cent after one year from date of sale;
and was to be compensated "for lots sold, all of the price for
which each lot is sold in excess of the rate of $1,000 per acre
for the land, subject to this agreement, added to the cost of
improvements to be made under this agreement."   There were
27.64 acres in the tract.   It was provided that the compensa-
tion just mentioned "shall be as follows:

"Ten per cent (10%) of the selling price of each lot out of
the first moneys paid in on such sale.   And after the first
party shall have received two hundred and fifty dollars ($250)
and interest, if any, on the sale of a lot, then the second

parties shall be paid the balance received on such lot, and finally, any amount received in excess of the sum of twenty-seven thousand six hundred and forty dollars ($27,640) and the actual cost of the improvements upon said tract, should any excess have been received by the first party.

"When the first party shall have received the full sum of twenty-seven thousand six hundred and forty dollars ($27,640), together with the costs of improvements on said land, and interest paid in on deferred payments, he shall transfer in due form to the second parties, *all* unpaid contracts, mortgages and obligations received on sale of lots; and duly convey to them all lots in said tract not theretofore sold and conveyed. All interest, if any, on deferred payments for lots shall inure to the benefit of the first party."

The contract concluded with the following paragraph:

"Time is of the essence of this agreement, and upon the failure of the second parties to keep the covenants on their part herein contained, this agreement shall, at the option of the first party, become null and void and all right of said second parties shall end."

The parties proceeded to operate under this agreement, and by about April 4, 1906, Armitage had found purchasers for ninety-six lots. Twenty-three of these had been sold for cash and deeds conveying them had been delivered by Cole. The remaining seventy-three lots were sold upon contracts for differing amounts. The avails of these transactions had been segregated between the parties under the terms of the agreement and there yet remained due Cole, pursuant to those terms, the sum of $19,948.30. On April 4, 1906, Cole and Armitage made a new arrangement of their affairs under the contract, in the form of a trust agreement to which the appellant Trust Company was a party. The agreement recited that the Trust Company had received and accepted the seventy-three contracts and also deeds to the unsold lots. The company obligated itself to receive moneys payable on the contracts of sale and to deliver deeds to the purchasers as balances due on contracts were paid; to pay first to Armitage ten per cent of the selling price under each contract as collections came in, except in the case of contracts on which he had already received ten per cent or a portion thereof, and on the latter to pay the balance to total ten per cent; to pay to Cole the remainder collected on each contract until, together

with certain other payments, he received the sum of $19,-948.30; to execute contracts of sale on lots thereafter sold, upon the order of either Cole or Armitage, provided that sales made by Cole should not be for less than figures fixed by a certain schedule attached to the trust instrument; to pay to Armitage ten per cent upon the purchase price under contracts of sale so executed by it; to pay to Cole the remainder collected by it on such contracts until from such collection and from amounts paid to him on old contracts, under the provision above noted, he received the sum of $19,948.30 already mentioned; to pay to Armitage, after the payment to Cole of that sum, all further collections under all contracts of sale and also to execute to him deeds to all the lots then unsold; to pay to Cole all interest collected on all contracts of sale until the principal sum of $19,948.30 was fully paid him, the interest to be no part of that sum; to use such part of collections as might be necessary to make improvements determined by Armitage to be required on the property and to pay off liens, including taxes, such payments not to be considered as payments to Cole; and to pay off a certain mortgage and charge the amount against Cole's nineteen thousand dollars. The trust agreement ended with a provision to the effect that it was "intended to carry out the contract" of February 1, 1905, "as modified by extending the life of said contract to February 1, 1907, and by directing the payment to C. Cole of all money arising out of the sale of lots above ten per cent until he shall be fully paid, as directed."

The action was commenced by Cole, as late as February 6, 1913, against the appellant Trust Company alone for a termination of the trust arrangement, his theory being that, through the failure of Armitage to finally carry out the agreements between them, time being of their essence, he had become the sole beneficiary under the trust. The appellant de Jersey, an assignee of Armitage, filed a complaint in intervention upon the claim that Armitage's beneficial interest in the trust had not terminated, and Armitage himself was later brought in as a party defendant. The judgment declared the trust terminated and directed the appellant Trust Company to reconvey to Cole the property yet remaining in its hands.

The provision in the original contract that time was of its essence was not disturbed by the terms of the trust agreement. The period of eighteen months, fixed in the contract, was by

the trust arrangement extended to a period of two years, or until February 1, 1907, and that day became, upon the erection of the trust, the date to which the provision that time was of the essence was thenceforward to fasten itself. The time element in these transactions required only that Armitage should have sold, before February 1, 1907, enough lots to produce to Cole from contracts of sale, as they matured, the sum of $19,948.30. The trial court adopted this theory and framed its findings of fact accordingly. The findings are to the effect that Armitage did not "sell a sufficient number of said lots . . . to yield to the said Cornelius Cole . . . either the said sum of $27,640 provided to be paid under said contract of date February 1st, 1905, or the said balance of $19,948.30 due thereon at the time of" the creation of the trust. It is further found that time was of "the essence of said agreement" and that unless Armitage, before February 1, 1907, "did cause . . . sufficient contracts to be entered into for the purchase of lots . . . to yield the said sums to said Cornelius Cole hereinabove referred to, to wit, the aggregate sum of $27,640 net, that" Armitage did not become entitled to a conveyance of the property held by the Trust Company.

The court found that there was due Cole, of the nineteen thousand dollar item, the sum of $2,105.86, together with certain other amounts representing advances made or to be made by him, which raised the total amount due to $4,241.36, and there were other findings negativing the possibility that anything remained due on outstanding contracts of sale. The appellants contend that there were several items of expenditure by the Trust Company, made during its management of the trust, which were not charged against the nineteen thousand dollars to be paid Cole, but which should have been so charged. It is urged that if those items had been charged to Cole, the balance of $4,241.36 found in his favor would have been extinguished; that the terms of the original contract and of the trust agreement thus would have been satisfied by Armitage and he would have become entitled to conveyance from the Trust Company of the property remaining in its hands. One of these items is the sum of $4,263.57, paid long after February 1, 1907, on the order of Cole alone, to the Stutzer Cement & Grading Company for street work on the tract. Not only was the amount paid after the day named, but the contract with the Grading Company, entered into with it by Cole, under

which the payment was made, was not executed until about two months after that date. It will be remembered that, under the trust agreement, street work in the tract was to be done upon the determination of Armitage alone. The respondent meets the claim of appellants with the assertion that the election of Armitage to have streets improved and his consent to the payment of bills for such improvement was not necessary after February 1, 1907, as the trust had then terminated; but that is begging the very question involved in the contention of appellants. The Trust Company had on hand the money paid to the Grading Company for the street work as avails from contracts of sale upon deals made by Armitage before that date. The amount was applicable to the fund to be paid to Cole, namely, the $19,948.30, plus the other items to which he was entitled under the trust; and, leaving aside the question as to what extent it was made up of accumulations of interest—as all interest belonged to Cole under the arrangement—it would have more than met the item of $4,241.36 found by the trial court to be due Cole. Under such a state of affairs, Cole had lost all interest in the property and had no power to contract for or to pay bills toward the improvement of streets within it.

Appellants also object to an item of $2,562.51 paid out by the trustee in 1909 to satisfy liens arising under the Vrooman Act for public street work done in the tract. The respondent claims that it was made the duty of the trustee to pay off such liens, but that suggestion does not meet the question. As we have just said about the other item to which objection is made, the trustee had this sum of $2,562.51 on hand as a result of sales made by Armitage. What might become of it years after February 1, 1907, no matter when it may have been collected, is a matter of no moment in the settlement of the question now confronting us, as, considering what we have said and what the trial court found concerning the provision that time was of the essence of the transactions between the parties, Cole had no right in the property after February 1, 1907, provided Armitage had made enough sales to net him the amount to be paid him.

Of the two items of $4,263.57 and $2,562.51, or, in all, $6,826.08, it is impossible for us to determine how much was interest which belonged to Cole, as we are not furnished with the dates of the various contracts of sale and of the

payments made upon them; but the rate of interest is fixed in the original contract which might be charged in such contracts of sale and we can determine approximately the time the contracts might run. From these data we are compelled to conclude that so much of the amount last mentioned could not be interest as would prevent the remainder from more than meeting the balance of $4,241.36 found by the trial court to be due Cole, especially as it appears from the findings that $2,135.50 of that sum was credited to him on account of taxes, accruing in years after 1907, and paid or to be paid by him. This sum of $2,135.50 is, then, in the same category with the amount above mentioned as having been paid to satisfy Vrooman Act liens. The sum of $4,241.36 is, therefore, subject to a deduction of $2,135.50, leaving only $2,105.36 to be covered by so much of the $6,826.08 as was not interest belonging to Cole.

The judgment and order are reversed and the cause remanded.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 6, 1917.