[Civ. No. 3538. Second Appellate District, Division One.—September 27, 1921.]

## CORNELIUS COLE, Appellant, v. MERCHANTS TRUST COMPANY et al., Respondents.

[1] CONTRACT — AGENCY FOR SALE OF LOTS — DURATION — EFFECT OF SUBSEQUENT TRUST AGREEMENT.—Under a contract giving an agent the exclusive right of sale of lots for a period of eighteen months at prices payable in monthly installments, and providing that the compensation of the agent should be, first, a percentage of the amount of each sale, payable out of the first moneys received thereon, second, all of the purchase money for each lot in excess of a certain sum, and, third, all moneys received in the aggregate from sale of lots in excess of a stated amount, and under a declaration of trust, executed for the purpose of carrying out the contract, conveying the unsold lots and the contracts upon which payments were not fully made to the trustee, and extending the life of the contract for a period of six months, the provision in the agency contract making time of the essence thereof did not apply to the time within which the owner was to receive the aggregate amount, but to the time within which the agent should procure contracts for the sale of lots under which the owner's share would be sufficient to make such aggregate.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Reversed.

The facts are stated in the opinion of the court.

Haas & Dunnigan and J. J. Wilson for Appellant.

Hunsaker, Britt & Cosgrove, Robert B. Murphey, Benjamin E. Page and Arthur C. Hart for Respondents.

SHAW, J.—Plaintiff was the owner of 27.64 acres of land which he was desirous of selling for $27,640 net. With this object in view he, on February 1, 1905, executed a written contract with F. W. Armitage wherein he agreed to subdivide the tract into lots as per map attached; grade all of said streets delineated on said map other than Marathon Street, and grade and gravel the sidewalk on all streets graded; execute contracts of sale for all lots sold by Armitage, the price of which should not be less than $250 each and upon terms of sale which required the payment of not less than $25 cash and the balance of the purchase price at the rate of not less than $10 per month, which deferred payments should bear interest, commencing one year from date of sale, at seven per cent per annum; and execute deeds to the purchasers to whom certificates of title should be delivered as each lot was paid for. Armitage on his part agreed to advertise the lots for sale, maintain an office on or near the tract, use due diligence to complete the sale of said lots during the life of the agreement, which gave to the agent the exclusive right for eighteen months for the performance of the contract, pay the cost of subdividing, recording map and procuring certificates of title, sell no lot for less than $250, nor on more advantageous terms to buyers than $25 down and $10 per month, with interest at seven per cent on balance, commencing after one year from sale. It was agreed that the compensation of Armitage should be, first, ten per cent of the amount of each sale, payable out of the first moneys received thereon; second, all of the purchase money for each lot in excess of $250; and, third, all moneys received in the aggregate from sale of lots in excess of $27,640, added to the interest on deferred payments, and money expended by first party in improving said land (consisting of the grading of streets and grading and graveling of sidewalks). In addition to which it was provided that when Cole received the amounts specified to be paid to him, all of the lots remaining unsold, together with contracts upon which payments were not fully

made, were to be conveyed and transferred to Armitage.
It was further provided that ''time is of the essence of this
agreement, and upon the failure of the second party [Armi-
tage] to keep the covenants on his part herein contained,
this agreement shall, at the option of the first party [Cole],
become null and void and all right'' of Armitage shall
end.

Immediately upon the execution of the contract the par-
ties entered upon the performance of their respective cove-
nants, and prior to April 4, 1906, prior to which Cole
graded the streets and sidewalks, Armitage sold twenty-
three of the lots for $7,945.70, cash, for which Cole exe-
cuted deeds to the purchasers, and likewise executed
contracts to purchasers of seventy-three lots sold on time,
and at prices largely in excess of $250 each.   Of the money
so received up to April 4, 1906, Cole had received $9,362.50
in cash, and held contracts upon which there was unpaid
the sum of $25,650.   At this time an account stated was had
between the parties showing a balance to be paid to Cole of
$19,948.30.   Thereupon and although several months must
elapse before the expiration of the terms of the exclusive
agency so granted to Armitage within which he might con-
tinue selling lots and procuring contracts from which Cole
should be paid the balance of the $27,640, being the agreed
price of the land, together with other sums specified to be
paid him under the terms of the contract, a declaration of
trust was executed under which all of the unsold lots and
the seventy-three contracts upon which balances were due
from the purchasers of lots, should be and were conveyed
and transferred to the Merchants Trust Company, which
company was authorized to collect the moneys due upon
said contracts as the same became due and payable, and,
when entitled thereto, execute deeds to purchasers of lots,
and execute contracts of sale to purchasers of unsold lots
upon the unqualified order of Armitage, or upon the order
of Cole, whose right to sell, however, was subject to a spe-
cified price being obtained largely in excess of $250; and
pay and distribute the money collected and received by said
Trust Company from the contracts assigned to it, as well as
from sales and contracts of sale to be executed by it, in the
following manner, to wit: To Armitage, any balance of ten
per cent due him as commissions on assigned contracts, to-

gether with ten per cent of the purchase price of all lots
sold by the Trust Company upon the order of Armitage or
Cole; and next pay to Cole the sum of $19,948.30, and also
pay any sums expended in the *further improvement* of the
property, provided such improvement was *necessary, in the
opinion of Armitage,* and also any sums necessary to remove
any liens, including taxes, which payments, however, for
liens, taxes, or further improvement of the property required
by Armitage were not to be deemed any part of the $19,948.30
and interest collected on contracts due to Cole. It was fur-
ther provided that "this declaration of trust is intended to
carry out the contract made February 1st, 1905, between
C. Cole of the one part and . . . F. W. Armitage . . . of
the other part, as modified by extending the life of said
contract to February 1, 1907, and by directing the payment
to C. Cole of all money arising out of the sale of lots above
ten per cent until he shall be fully paid."

It thus appears that the declaration of trust not only ex-
tended for a period of six months the time within which
Armitage might sell the lots, but modified the agreement in
that no charge should be made against Armitage for *further
improvements* of the property (that is, other than improve-
ments theretofore made pursuant to the terms of the agree-
ment in regard to grading streets and sidewalks), unless the
same were, in his opinion, necessary, and for the provision
in the agreement under which Armitage, in addition to his
ten per cent commission, was given the right to all of the
money received on the sale of a lot in excess of $250, there
was substituted the provision that other than the ten per
cent commission to be paid to Armitage, *all of the money*
derived from the sales of lots, less the ten per cent commis-
sion, should by the trustee be applied in liquidation of the
amounts due to Cole. During the period between April 4,
1906, and February 1, 1907, the Trust Company sold ten
lots upon contracts for the aggregate sum of $5,525, which,
together with the aggregate amount due upon the seventy-
three contracts so transferred to the Trust Company, and
after deducting the ten per cent due Armitage, left a sum
largely in excess of that to which Cole was entitled and
which, after being paid, also left in the hands of the trustee
certain unsold lots.

On February 6, 1913, and after all of the lots save and except thirty-two of those so conveyed to the Trust Company had been disposed of and the moneys collected upon the contracts, and from the proceeds of which plaintiff Cole had been paid the full balance of the $27,640, together with interest and costs of improvements, all as called for by the agreement made with Armitage on February 1, 1905, he brought this action against the Merchants Trust Company to terminate the trust and procure a reconveyance of the thirty-two lots constituting the trust property. In its answer the Trust Company admitted the existence of the trust, but denied that plaintiff was the sole beneficiary thereunder, alleging that it held the property in trust for plaintiff and F. W. Armitage. As assignee of Armitage, Basil H. De Jersey filed a complaint in intervention, setting forth the facts in relation to the trust and asking for an accounting and conveyance to him of the unsold lots. Plaintiff answered the complaint in intervention, as likewise did Armitage, the latter admitting the truth of all the allegations contained in such complaint. A trial was had upon the issues raised by plaintiff's answer to the complaint in intervention, as a result of which the court denied any relief to the intervener and rendered a decree terminating the trust and ordering the Trust Company to convey the trust property to plaintiff. From this decree De Jersey, as intervener, and the Merchants Trust Company appealed, and the judgment so rendered was reversed by this court in an opinion reported in 34 Cal. App. 82 [166 Pac. 871]. Thereupon a retrial of the case was had upon the same pleadings, with the result that a judgment was rendered terminating the trust and ordering a conveyance of the property remaining in the hands of the trustee to B. H. De Jersey, assignee of F. W. Armitage. From this judgment plaintiff has appealed.

[1]    On the former appeal, as in this, the chief contention of plaintiff was that the provision in the agreement dated February 1, 1905, making time the essence thereof was intended to and did require the payment to plaintiff of the full sum of $27,640 within the eighteen months as extended for a period of six months by the declaration of trust. To quote counsel for appellant: "The bald proposition is: Did

the parties contemplate the payment to Cornelius Cole of
$27,640.00, together with costs of improvements and interest
paid in on deferred payments, within eighteen months from
the first day of February, 1905, and the additional six
months extension granted under the declaration of trust,
making the full time limit twenty-four months, or was it the
intention of the parties that all that the declaration of trust
required, was that the selling agent, Armitage, procure con-
tracts of purchase for lots in the tract in question, sufficient
in number or amount, regardless of the time within which
the payments on said contracts should be completed, suffi-
cient to pay Cole $19,948.30, provided said contracts be
obtained within the twenty-four months limit as found by
the court?'' This was the identical question involved on
the former appeal, and the adverse decision made in con-
struing the instruments must be deemed the law of the case
on this appeal.  We may add that, in view of the fact that
under the contract payment to Cole was to be made out of
the proceeds arising from the sales of lots at not less than
$250 per lot, upon terms of $25 cash and $10 per month, it
is apparent that by the agreement the parties contemplated,
not the full payment to Cole of the amount due him within
such specified time, but that Armitage, under his exclusive
agency, should, within the time so fixed and as extended by
the declaration of trust, negotiate a sufficient number of
contracts from which, as paid, a sufficient sum over and
above commissions would be derived to liquidate the amount
due to Cole as provided under the terms of the contracts.
Any question as to this being the proper interpretation of
the agreement disappears when the contract is construed
with the declaration of trust under which the trustee was
authorized to execute contracts for the continued sale of
property upon the terms mentioned in the agreement of
February 1, 1905, and which necessarily carried the time
of full payment years beyond February 1, 1907, when the
term of the agency expired.  The findings upon this point
are based upon the evidence taken in the first trial, and also
new and additional evidence touching the intention of the
parties and circumstances under which the agreements were
made.  The character of the new evidence is conflicting, and
it is not of a nature which would warrant any interpreta-
tion of the instruments other than that which was accorded

them upon the hearing of the former appeal, and in accordance with which decision a retrial was had. We again hold that the provision of the contract making time of the essence thereof applies not to the time within which Cole was to receive the $27,640, but to the time within which Armitage should procure contracts for the sale of lots wherein Cole's share thereof would, when collected in accordance with the terms of the contract of sale as modified by the trust, be sufficient in the aggregate to secure to him payment of the agreed purchase price.

Under the declaration of trust, as we have seen, Cole's interest in these contracts covered *all of the purchase price* over and above ten per cent of the sales price specified therein. While it appears that at the expiration of the six months specified in the declaration of trust sales of property had been made for cash and upon contract, the proceeds of which in the aggregate were largely in excess of the sum due Cole under the terms of the contract and declaration of trust, nevertheless the trust could not be terminated until Cole, as one of the beneficiaries therein, had received the full amount due to him. It is conceded that this sum consisted of $22,461.68, made up of the sum of $19,948.30 specified in the trust agreement, together with $1,776.91, covering all interest paid in upon lot contracts, and $736.47 advanced by Cole in 1911. He was paid $20,355.82, leaving a balance of $2,105.86. It appears, however, that in 1909, long after February 1, 1907, to which the time for performance of the agreement was extended, Cole entered into a contract for the further improvement of the streets, under which contract the Trust Company, upon his order and direction, paid for such work the sum of $4,263.57. The court found that this sum was not an expenditure provided for under the contract of date February 1, 1905, nor under the trust agreement dated April 4, 1906, and was made without the knowledge, approval, or consent of Armitage, and was properly chargeable against the plaintiff, Cornelius Cole. Appellant attacks this finding, claiming that it is contrary to the evidence. We cannot assent to his contention. When the contract of date February 1, 1905, was entered into it provided that Cole should grade certain streets and grade and gravel the sidewalks thereon. It appears that this work was promptly done under a contract with one Crandall. Under

the trust agreement Cole had no authority to further improve the streets at the expense of Armitage, and particularly so since at the time he entered into the contract Armitage had procured a sufficient number of contracts for sale of lots from which Cole, as the money was paid thereon, would be fully paid, and therefore he had no interest in the further improvement of the lots. Moreover, in the trust agreement it was provided that the trustee should not use any sum of money in its possession "to further improve the property" so conveyed to it, unless Armitage deemed such improvement necessary. It is therefore clear that under our interpretation of the contracts, and that heretofore made by this court on the former appeal, the money, to wit, the sum of $4,263.57, so paid out at the request of Cole for the improvement of the streets, should, as found by the trial court, be charged to him as a part of the amount due to him as beneficiary in said trust.

The court further found "that the sum of $2,562.51, paid out by the Merchants Trust Company in 1909 with the knowledge and consent of the plaintiff, Cornelius Cole, to satisfy liens arising under the Vrooman Act, for public street work done in said tract, was made after all interests of the plaintiff in said tract had terminated, and was made without the knowledge of the defendant Armitage or of the intervener, and was not an expenditure properly chargeable against the trust fund held by the defendant Merchants Trust Company." This finding, in our opinion, is not supported by the evidence. The declaration of trust provided that "should it be necessary to remove any liens, . . . now existing, or hereafter to exist on the said property, . . . the trustee shall use any funds in its possession for this purpose, provided, however, that money so used shall not be deemed a payment to the said Cole." It therefore appears that it was the duty of the Trust Company, independently of Cole or any request therefor made by him, to apply the sum of $2,562.51 of the trust funds in satisfaction of the liens created by assessments made upon the lots for street improvement due to action had and taken under the Vrooman Act. (Stats. 1885, p. 147, as amended). In the accounting had the trial court, therefore, erred in finding that this sum should be chargeable to plaintiff Cole.

The error, however, was not prejudicial to plaintiff for the reason that, as properly found by the trial court, he had received the sum of $4,263.57, wrongfully paid to him by the trustee and to which he was not entitled, which sum, conceding that he was erroneously charged with the $2,562.51, was much more than sufficient to offset that to which he was entitled. Indeed, it appears that he was overpaid by the difference between the two sums stated.

We attach no importance to appellant's contention that Armitage was prohibited by the agreement of February 1, 1905, from assigning his interest in the contract. Conceding that he did, prior to the commencement of the action, assign to De Jersey all his right, title, and interest as a beneficiary under the declaration of trust, it was at a time when Armitage and the trustee had fully performed their part of the contract. Moreover, there is nothing in the declaration of trust prohibiting the making of such assignment. Cole had parted with the legal title to the property and his rights and those of Armitage were only such as existed under the trust; hence either might assign his interest therein. (*Tyler* v. *Granger,* 48 Cal. 259.)

The judgment as rendered is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 22, 1921, the district court of appeal having, on October 24, 1921, modified its opinion and judgment to read as above.

All the Justices concurred, except Lawlor, J., who was absent.