## WILEY v. CALIFORNIA HOSIERY CO.

### No. 14,386; March 6, 1893.

#### 32 Pac. 522.

**Traveling Salesman—Action for Discharge—Evidence.**—A written proposition by defendant to plaintiff recited that "we will pay you a commission of seven and one-half per cent on all orders taken by you and shipped by us between this date and October 31, 1887. You are not to pay out any money or contract any obligation of whatever nature for us, nor represent us in any legal proceeding of any kind or in any place, unless specially authorized in writing so to do. Your duty to us is to take orders for our goods. We reserve the right to decline such orders as we may not want to fill"; and the same was orally accepted by plaintiff. Held, in an action by plaintiff for a wrongful discharge, that oral evidence was inadmissible to change or enlarge the terms of the contract thus made, except as to matters necessarily implied in it or necessary to its performance.[1]

**Traveling Salesman—Action for Discharge—Evidence.**—In such action plaintiff is not entitled to recover the specified commission on the amount of goods sold by other salesmen for defendant in territory in which plaintiff claimed the exclusive right to sell for it, since he had not such privilege under the contract.

**Traveling Salesman—Action for Discharge—Commissions.**—The fact that plaintiff, for three years preceding such contract, had solicited orders for defendant in such territory would not entitle him to such privilege, and evidence of such fact is inadmissible.

**Traveling Salesman—Discharge from or Quitting Service.**—In such action plaintiff admitted that he took orders at prices below those given to him by defendant, and without its express permission, and that, when he told defendant's secretary that he could not get such prices of certain persons, he said, "You have got to get these prices for the goods, or else not sell them, and the goods have to bring that price this year." The evidence showed that defendant wrote plaintiff several times protesting against his taking orders at cut prices, and finally wrote him that "we will have no man working for us in any manner who will not take our instructions. Because you have been with us a long time, we again give you your choice of doing as we want you to do, or return our samples and reference

---

[1] Cited in Amherst Inv. Co. v. Meacham (Wash.), 124 Pac. 682, as authority for the principle that a contract signed by only one party, but accepted and acted upon by the other, is as obligatory upon this other as though he had signed it in the first instance.

book"; and that plaintiff replied that "you have been the only violators of the contract, and I defy you to show a point wherein I have not fulfilled it to the letter. In your letter of July 7th, you state I may consider myself no longer in the employ of your company. I consider a full discharge." Held, that plaintiff voluntarily quit defendant's employ, rather than comply with reasonable instructions, and the evidence did not support a verdict for plaintiff.

Traveling Salesman—Action for Discharge—Damages.—An instruction in such case that, if the jury found for plaintiff, they should find the amount of defendant's goods plaintiff would have sold during the remainder of his term of employment, and allow seven and one-half per cent thereon, is erroneous, since it fails to take into account plaintiff's expenses, which should be deducted therefrom.

Traveling Salesman—Action for Discharge—Commissions.—In such action plaintiff testified that he told defendant's secretary that he could not sell their goods alone for less than ten per cent and the former promised him a side line of flannels; that "I said that is just what I wanted, and on the strength of that we entered into this contract. I told him I was to have a line of gloves in connection with defendant's goods." Held, that plaintiff was not entitled to recover for commissions that he would have made on the sale of gloves during the remainder of his term of employment, in the absence of any other evidence of a contract with defendant in relation thereto.[1]

Traveling Salesman—Action for Discharge—Evidence.—In such action evidence of a usage by which plaintiff was allowed, in his discretion, to make reductions within certain limits from the price list, in so far as the same was inconsistent with the written agreement and positive instructions of defendant, was inadmissible.

Traveling Salesman—Action for Discharge—Commissions.—In such case the rule for estimating the amount of sales plaintiff would have made during the remainder of his term of employment should be based on the sales made during the part of the term which had expired at the time of the discharge, modified by the facts as to whether the sales would be greater or less during the early or later period.

APPEAL from Superior Court, City and County of San Francisco; Eugene Garber, Judge.

---

[1] Cited as one of many cases in Emerson v. Pacific Coast & Norway Packing Co., 96 Minn. 8, 113 Am. St. Rep. 603, 1 L. R. A., N. S., 445, 104 N. W. 576, tending by their "letter and spirit," to the effect that an "agent discharged before the expiration of his term, without just cause, is entitled to have the jury consider as an element of his damages his commissions on the amount of new business written by the defendant within his period through a new agent for the unexpired term."

Action by Thomas Wiley against the California Hosiery Company to recover damages for a wrongful discharge of plaintiff as defendant's traveling salesman. From a judg. ment entered on the verdict of a jury in favor of plaintiff, defendant appeals. Reversed.

P. Reddy and W. H. Metson for appellant; S. H. Regensburger and P. F. Dunne for respondent.

HAYNES, C.—Action to recover damages for an alleged breach of contract. A jury trial was had, and the plaintiff obtained a verdict and judgment for $1,000 damages. The appeal is from this judgment and an order denying defendant's motion for a new trial. The complaint alleged that on February 10, 1887, plaintiff and the defendant (a corporation) mutually agreed that plaintiff should serve the defendant from that date until October 31, 1887, as a traveling salesman to sell and take orders for defendant's goods, for which plaintiff was to receive a commission of seven and one-half per centum, and pay his own expenses; that, as a further inducement, defendant was to give plaintiff the exclusive right to sell its goods in Utah, Colorado, Nebraska, Wyoming, New Mexico and Kansas; and, as breaches of this agreement, plaintiff alleged that in May, 1887, defendant, while plaintiff was faithfully discharging his duties, sent another salesman to Salt Lake City and Ogden, in Utah, who made sales in those places amounting to $2,500, and that on July 1, 1887, the defendant wrongfully discharged plaintiff; that thereby he was prevented from selling at least $20,000 of defendant's goods; and, as another element of damage, plaintiff alleged that, as part of his said agreement and of the consideration thereof, defendant agreed that plaintiff should have the privilege of carrying for sale a line of gloves manufactured by another house, upon which he was to receive ten per centum commission, he paying his own expenses, but that he could not carry the gloves alone to make a profit or cover expenses; and that by his discharge he was prevented from selling gloves to the amount of $3,000, and demanded judgment for his commission on the $2,500 sold by another in Utah, and upon the $20,000 of defendant's goods he could have sold during the

remainder of his term of service, at seven and one-half per centum, and upon the prospective sale of gloves, at ten per centum—in all $1,987.50. The answer of defendant specifically denied each material averment of the complaint, and for a further answer set out the written proposal of defendant to plaintiff for his employment, and under which he entered defendant's service, and which is as follows:

"Oakland, California, Feb. 10, 1887.

"Thomas Wiley:

"We will pay you a commission of 7½ per cent. on all orders taken by you and shipped by us between this date and October 31, 1887. You are not to pay out any money or contract any obligations of whatever nature for us, nor represent us in any legal proceeding of any kind or in any place, unless specially authorized in writing so to do. Your duty to us is to take orders for our goods. We reserve the right to decline such orders as we may not want to fill.

"CALIFORNIA HOSIERY CO.
"JOHN WILLIAMS,
"Secretary."

The answer further alleged that plaintiff accepted the proposal and entered upon said employment the same day, and was furnished by defendant with samples and a list of the prices at which he should sell defendant's goods; that in May and June, 1887, plaintiff took orders at reduced prices, whereupon defendant notified him that, unless he would promise in writing to be governed by the price lists, he should quit defendant's service; that he did not inform defendant that he would be governed by such price lists, but, on the contrary, notified defendant that he would quit its service; and that the contract between them was ended July 17, 1887. A great many exceptions were taken by defendant to adverse rulings upon the admission of testimony, and to instructions to the jury given and refused; and it is also specified that the verdict is not justified by the evidence in several particulars. It is not necessary to notice these specifications in detail. The discussion of some of the controlling questions must suffice.

The verdict in favor of plaintiff must have been based on a finding that plaintiff was wrongfully discharged. It is true that it is alleged in the complaint that defendant violated

the agreement by sending another man into his territory, and taking orders to the amount of $2,500. This occurred in May, and plaintiff's letter to defendant dated May 21st showed that he then had knowledge of the sales made by Deane in Utah, but plaintiff continued in the service of defendant after the knowledge of this alleged violation of the agreement until July. Besides, this violation of the agreement, if it were such, was capable of exact compensation; and, as it was not alleged or claimed that such violation was continued or threatened to be continued, it could form no just excuse for the abandonment of the contract by plaintiff. But we do not find in the record any evidence which would justify a finding that plaintiff was to have the exclusive right to sell in the states and territories named. It is conceded by plaintiff that nothing was said upon that subject at the time the agreement was made, but it is said that, for three years preceding, plaintiff had solicited orders in those states and territories for defendant, and it seems to have been assumed by plaintiff that he was to have the exclusive right in those states and territories in 1887. The evidence, however, in relation to this matter could only be material as tending to support the charge that defendant had violated its agreement. As this agreement was in writing, we think no oral testimony could be received to change or enlarge its terms, at least in matters not necessarily implied in it, or necessary to its performance by either party. The verdict of the jury must therefore be sustained, if at all, upon the assumption that plaintiff was wrongfully discharged by defendant; and upon this point it is clear the verdict of the jury cannot be sustained. It is admitted by plaintiff that he took orders at prices below those given to him, and without express permission from the defendant. He claims, however, that the reductions made upon certain orders were made under and in accordance with a usage of defendant by which he was allowed to use his discretion, within certain limits, to make reductions from the list prices upon certain orders for more than a specified quantity of particular kinds of goods. He testified that he knew, as matter of fact, in 1887, when A–1, six of the same kind in a box, were sold, the course of business was to give the buyer fifty cents reduction; but he testified that at the time of the agreement of February 10th he said to Williams, "I won't be able to sell

these goods in Wyoming to B. Hellman & Co. at the advanced figures.'' Mr. Williams said: ''You have got to get these prices for the goods, or else not sell them, and the goods have to bring that price this year.'' He further testified ''that it meant the price of every article to be sold by him—for which he should sell it only as modified in writing or some way in a proper communication.'' The witness further testified that all he had stated concerning usage was based upon a memorandum in writing, written by Mr. Williams in a little book which he received in 1885. Shortly after plaintiff entered upon defendant's employment he was expressly authorized, in writing, to cut prices within certain specified limits on two classes of goods; but plaintiff conceded that he had no instructions to cut on other goods. The instruction was: ''When strictly necessary, you may cut A–1 and 1,935 to $18.00; but the twenty gauge must be held where they are, at $16.50.'' He admitted that he cut A–1 to $18, 2–12 in a box, and to $17.50, 6–12 in a box (six of one size in a box); that the writing was in English, and that he understood it to cut to $18, and regarded it as the positive instruction of his employer to cut to $18, and no more; that he had no instructions to cut on 1,995, but that he cut that number from $16.50 to $16, 6–12 in a box, but admitted he did not know of 1,995 ever being out in 6–12 boxes. We can see from the testimony of plaintiff no evidence of usage justifying a departure from the list prices given him by defendant. Indeed, his own testimony showed that he was never at any time authorized to make changes in prices because of any usage. The very fact upon which he relies to establish a usage was based upon a written instruction in 1885. This instruction was not renewed in 1887, but, on the contrary, he admits that he was informed at the time of his employment that the goods that year must bring the prices marked, and these instructions he admits were positive and clearly understood. We therefore conclude that there was no evidence of usage or otherwise which justified the defendant in cutting prices upon any of these goods, except as to the two classes named in defendant's letter of March 24th, which specified distinctly the extent to which, as well as the circumstances under which, such reductions might be made.

On June 11th defendant wrote plaintiff, among other things saying: "Where is your authority for cutting prices? We have written to B. Hellman that we will not fill his order except at regular prices. You are the only salesman who finds it necessary to cut. If you cannot get an order without cutting, do not hurt yourself and us by cutting the price, and then having us to reject the orders for that reason. . . . . You must get full prices, or else you must give up. We will not send you any more samples until you notify us that you will not cut prices without authority. If you do not do that, please send us our samples by freight at once." In another letter, written the same day by defendant to plaintiff, it was said: "You cut prices again to J. E. Miller and to Myers & Nessly, of Lincoln, Nebraska. We will not fill the orders except at the regular prices given you. We must reiterate, prices must not be cut. Our goods can be sold in your territory without cutting. If you do not sell them we will do it ourselves, but we will do nothing until you have had an opportunity to decide whether you will return the samples or not. July 1st will be the end of our limit." On July 7th defendant wrote plaintiff acknowledging receipt of five orders, and calling plaintiff's attention to the fact that he had not answered defendant's letters of June 11th, and added: "We wrote you then that you would have until July 1st to decide whether you would return our samples, or promise to stop cutting prices. You have neither returned the samples nor written a line in answer to the letters. We do not, therefore, consider that you are now in any manner in our service." Following these letters we find in the record a letter from plaintiff to defendant, bearing date Salt Lake City, July 11, 1887, but evidently written at a much later date, saying: "Your letters of June 11th and also letters of July 7th were received, and contents noted. To answer them fully and satisfactorily to you and myself, it would, according to my judgment, require a personal interview, which I trust will take place on early date. . . . . I shall not, in opposition to your wishes, take any orders here until I fully hear from you." On July 15th defendant wrote plaintiff, in reply to plaintiff's letter above mentioned, advising him that it was not necessary to have a personal interview, and again saying that he had been cutting prices without authority, and that, when written

to about it, had not said a word one way or the other, and
added: "For such an offense as this, we would discharge any
man working on a salary. It is something that we cannot
permit, and we know that it is not necessary. . . . . We do
not like this uncertainty, and it puts us to a great deal of trou-
ble to make new arrangements. We will have no man work-
ing for us in any manner who will not take our instructions.
Because you have been with us a long time, we again give you
your choice of either doing as we want you to do, or return
our samples and reference book." To this letter plaintiff re-
plied under date of August 2d, and, after discussing the mat-
ter of cutting prices, and the sales made by Deane at Salt
Lake City and Ogden, said: "You have been the only violators
of the contract, and I defy you to show a point wherein I
have not fulfilled it to the letter. In your letter of July 7th
you state I may consider myself no longer in the employ of
your company. I consider a full discharge." It is perhaps
immaterial, so far as the merits of the case are concerned,
whether plaintiff was discharged by defendant, or he pre-
ferred to quit defendant's employment, rather than to give
any assurance that he would not disobey their positive in-
structions. We think it is clear, however, that the circum-
stances fully justified the defendant in discharging plaintiff;
but that, notwithstanding the defendant's language in its let-
ter of July 7th, that "defendant did not consider himself
longer in their employ," the subsequent letter again renewed
the offer to continue in their service upon his complying with
their request. That request being reasonable, under the cir-
cumstances, we are led to conclude that the plaintiff volun-
tarily, and without sufficient reason, quit the defendant's
employ. We conclude that the evidence is not sufficient to
justify the verdict, and that the motion for a new trial should
have been granted. We also think the verdict was against
the instructions of the court, as given in the third, fourth,
sixth, eighth, and ninth instructions given at defendant's
request.

As we cannot assume that upon a new trial the evidence
will be the same upon the question of defendant's liability,
it is necessary to notice briefly the question of damages. The
court instructed the jury as to the measure of damages sub-
stantially that, if they found for the plaintiff, they should

find the amount of the defendant's goods plaintiff would have sold during the remainder of his term of employment, and also the amount of gloves he would have sold during the same time, and allow seven and one-half per centum on the former and ten per centum on the latter. These instructions, as given, were clearly erroneous. Under the terms of his employment, plaintiff was to pay his own expenses. What he would have earned, therefore, would have been the amount of his commission upon the sale of defendant's goods effected by him, so far as the same were accepted and shipped by defendant, less the amount of his expenses incurred in securing orders. No reference is made anywhere in the charge of the court to these expenses. If the plaintiff voluntarily quit the defendant's employ, under circumstances justifying such course, or was wrongfully discharged, he would have been entitled to the same compensation for the remainder of his term of employment that he would have realized if he had continued in their employment, and no more. We cannot assume that he continued to incur expenses, and charge the defendant therewith, after he had quit soliciting orders. To do so would virtually change the terms of the employment to a commission of seven and one-half per centum and all expenses paid by the defendant.

In relation to the commission charged upon the prospective sale of gloves during the remainder of his term of employment, we do not think defendant can be charged therewith. Plaintiff agreed to sell defendant's goods for the commission named in the memorandum of agreement. There is no stipulation that he should represent others, nor that plaintiff made that a condition of entering the service of defendant. Plaintiff testified: "I told him [Williams] that I could not sell his goods for less than ten per centum—not his goods alone; but, if he would give me a side line of flannels, I could perhaps do it for seven and one-half per centum. He would not give me ten per centum, and he promised me a side line of flannels, besides their knit goods, for that territory, which I carried the year previous. Mr. Williams replied, 'We are going to sell California flannels in Colorado this year.' I said that is just what I wanted, and on the strength of that we entered into this contract. I told him I was to have a line of gloves in connection with defendant's goods." This last

remark is all that appears to have been said by either party in relation to gloves, and it clearly appears that, as defendant agreed to furnish him with a side line of flannels, which they had not theretofore sold, he was satisfied with the amount of commission to be paid to plaintiff. That it was to plaintiff's advantage to carry this additional line of gloves there is no question; but clearly, the defendant is not liable to the plaintiff for profits the plaintiff might have realized in serving others, when such extra service did not enter into the contract between the parties. We think the testimony in relation to the gloves, as well as that in relation to the amount of sales made in former years, and as to usage, so far as such usage was inconsistent with the written agreement and positive instructions given plaintiff by defendant, was improperly received. We further think that the true rule for estimating the amount of sales which would have been made of defendant's goods during the remainder of the term of employment should be based upon the sales made during that portion of the period of employment prior to the termination of it, modified, if the facts justified it, by evidence as to whether ordinarily the sales would be greater or less during the early or later period of employment. We think the judgment and order appealed from should be reversed, and a new trial granted.

We concur: Belcher, C.; Vanclief, C.

McFARLAND and FITZGERALD, JJ.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial granted.

DE HAVEN, J.—I concur in the judgment.