FITZGERALD, J., DE HAVEN, J., McFARLAND, J.

---

[No. 19290.    Department Two.—February 7, 1894.]

JOHN E. SANFORD, RESPONDENT, *v.* EAST RIVER-SIDE IRRIGATION DISTRICT, APPELLANT.

CONTRACTS—ACTION FOR BREACH—PERFORMANCE BY PLAINTIFF—CON-FLICTING EVIDENCE—QUESTION OF FACT.—In an action for a breach of contract, it is a question of fact for the jury to determine whether or not the plaintiff had performed on his part all that is requisite under the contract, and a finding in favor of the plaintiff upon conflicting evidence cannot be disturbed.

ID.—CONTRACT TO SINK ARTESIAN WELLS—BASIS OF DAMAGES—PROFIT UPON OTHER WELLS.—Where the plaintiff had a contract to sink five artesian wells not less than two hundred feet in depth, and to be five hundred feet in depth, if practicable and possible in the judgment of the defendant, it may be shown as a basis for damages sustained in not being permitted to sink four of the wells provided for in the contract, what was the profit of other wells in the same vicinity of an average depth of four hundred feet, and a verdict of the jury much below the sum reached by such profits is supported by the evidence.

ID.—CERTAINTY OF DAMAGES—MEANS OF ASCERTAINMENT.—Though the profit upon the sinking of artesian wells cannot be determined with mathematical certainty, yet the damages are fairly ascertainable in their character and origin within the meaning of section 3301 of the Civil Code; and the number and character of wells driven in the vicinity sheds light upon the question and affords the best means for it solution.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial.

The facts are stated in the opinion.

*Purington & Adair, R. E. Bledsoe, J. S. Noyes,* and *Elmer E. Rowell,* for Appellant.

*Charles J. Perkins, Paris & Satterwhite,* and *Paris & Allison,* for Respondent.

SEARLS, C.—Action to recover for work and labor in sinking a well, and damages for violation of a contract.

Plaintiff had judgment for $2,300.35 and costs, from which judgment and an order denying a motion for a new trial defendant appeals.

There are two counts in the complaint, in each of which the same contract is set out. One is to recover for services rendered under such contract, the other to recover damages on account of defendant's refusal to comply with the terms of the contract, and to permit plaintiff's assignors to prosecute work thereunder.

On the twelfth day of November, 1891, the corporation defendant, as the party of the first part, entered into the contract in question with J. E. Sanford & Co., as parties of the second part.

The contract recites that defendant has published proposals for bids for sinking one or more artesian wells upon its lands, known as the Garner and McKenzie places, on Lytle creek, San Bernardino county, California; that Sanford & Co. have filed bids to sink said wells, and that defendant has, by resolution of its board of directors, awarded to them the contract for sinking five wells, and has authorized its president and secretary to sign a contract therefor.

It is thereupon agreed that the party of the second part (Sanford & Co.) shall commence immediately sinking a well on said Garner tract, commencing with a ten-inch casing, and continue as far as such casing can be practically sunk; then with an eight-inch casing as far as practicable; then with a six-inch casing as far as practicable, the various depths to be according to the best judgment of the party of the second part, the well to be sunk to the depth of 500 feet, if practicable and possible in the judgment of the second party. Then follows the price to be paid per foot for sinking, which is $4.10 per foot for the first 200 feet; $5.75 for the third 100 feet; $6.50 for the fourth 100 feet; and $7.50 for the fifth 100 feet. Party of the second part to furnish all material, labor, and machinery to complete said five wells.

It is further agreed that if the engineer of defendant

shall direct that said wells shall stop at any point under 275 feet, 25 cents per foot is to be added to price, but if, by reducing the size of pipe, the party of the second part cannot go beyond the depth of 275 feet, nothing is to be added to the price per foot.

Payments to be made monthly from time of placing machinery at first well at the rate of 75 per cent of contract price for distance sunk, and residue when each well is completed. No payment to be made on any well until 200 feet has been sunk. The pipe, workmanship, and other conditions not specified shall be according to the specifications of the engineer, which are attached and made a part of the agreement.

The specifications are lengthy, and their provisions need not be set out except as questions arise under them; to that extent they are as follows:

1. The particular places on the McKenzie and Garner places where the wells are to be sunk are to be designated by the engineer of defendant.

2. All wells are to be sunk to a depth of 500 feet, unless obstacles are encountered which make this impossible, and the contractor shall use his utmost endeavor to attain such depth, but when impossible to do so the engineer may receive a well of less depth after requiring the contractor to perforate the pipe, to admit such streams as are passed in boring; but the engineer must not accept a well of less than 200 feet in depth. The contractor shall perforate the pipe to admit all streams as desired by the engineer.

3. If by accident, without negligence or fault of contractor, any well of 200 feet in depth cannot be reduced and sunk deeper, it may be accepted and paid for on being perforated. But accidents from incompetence or carelessness of contractor or his subordinates must be borne by him.

According to the complaint, the contractors commenced to sink the first well about November 12, 1891, and reached a depth of 253 feet, when they met obstacles rendering it impossible and impracticable, accord-

ing to their best judgment, to go deeper, of which, on May 3, 1892, they notified the defendant, in writing, and requested its engineer in charge to notify them if he desired the pipes perforated, but he failed to notify them; that they have been willing and able to do so since.

Defendant was requested to designate through its engineer the particular spot or place for starting a second well, or any one of the remaining four wells, all of which were refused.

The rights of the contractors, including the right to damages for a breach of the contract, are averred to have been assigned to plaintiff.

The answer, according to the contention of appellant, raised three issues:

1. That there had never been an assignment of the contract and alleged indebtedness to the plaintiff.

2. That said well had not been sunk as deep as possible or practicable.

3. That even if the defendant had failed to carry out the contract, the plaintiff or his assignors had suffered no actual damage thereby.

There was an assignment to the plaintiff in evidence, dated February 2, 1892, whereby the money due the firm and the interest of plaintiff's copartner in the contract were transferred to him. In justice to counsel for the appellant, it should be stated that he does not urge this point in his brief.

Under the head of insufficiency of the evidence it is urged: 1. That there was no evidence that plaintiff reduced the well to a six-inch pipe or casing, as required by the contract, or that he attempted to do so, and does show that if a six-inch pipe had been used the well could have been sunk to a greater depth than 253 feet.

The testimony involved a substantial conflict. F. C. Finkle, the engineer of defendant, testified, in substance, that he was desirous of having the well sunk deeper than the 253 feet, and that when he found the bottom of the eight-inch pipe was mashed, he told the plaintiff if he

could not straighten it out, to pull it, and put in a six-inch pipe, but that plaintiff thought he could straighten it. On the part of plaintiff there was testimony tending to show that they struck granite boulders in the bottom of the well, which crushed the eight-inch pipe, and broke or injured the ring and shoe, which were of steel, and as a result they could not remove or break up the obstacle so as to get a smaller pipe through; that he worked for 20 days with pumps and drills and 1,500 pounds of iron trying to break it up and get it out of the way, and failed. There was also testimony tending to show that the eight-inch pipe could not be pulled out of the well. Under these circumstances it was a question of fact for the jury to determine whether or not plaintiff performed on his part all that was requisite under the contract, and having found in favor of the plaintiff, such finding cannot be disturbed.

It is further objected that the contract did not provide for sinking more than one well, and hence that defendant is not liable for damages beyond that sustained on account of one such well.

The contract recites that defendant has called for proposals for bids for sinking "of one or more artesian wells," that Sanford & Co. "have filed a written bid to sink said wells," and "was awarded the contract for sinking five wells." Then follows the agreement, in which it is provided that plaintiff's assignors agree to furnish all the material, etc., to "complete said five wells."

It also provides that the engineer of defendant may direct that said wells may stop at any point under 275 feet: "No payment is to be demanded on any well until it shall have been sunk over 200 feet," and 25 per cent of the price is to be detained until "each well is completed."

The specifications provide where the wells are to be located, the places "where each well is to be sunk shall be designated by the engineer in charge."

There are many other allusions to the different wells,

but the foregoing quotations are deemed sufficient to indicate the intention of the parties in the premises to include the sinking of five wells.

As a basis for the damages sustained by plaintiff in not being permitted to sink the four other wells provided for in the contract, it was shown that there are a number of wells on the same ranch and in the vicinity of a depth averaging about 400 feet, some of them being as deep as 600 feet, and others not over 200 feet.

The damage of plaintiff was established by evidence tending to show the profit upon wells of this average depth of 400 feet, and as the verdict of the jury was far below the sum which would be reached by the profits, shown by the witnesses, it cannot be said the verdict was not supported by the evidence.

It is quite apparent that the problem of profit upon the sinking of artesian wells is not one susceptible of solution with anything like mathematical certainty. The different strata to be pierced, the difficulties to be met with of one kind and another, are factors which are likely to affect the result, but cannot be foretold with certainty. In the present instance the number and character of the wells driven in the vicinity shed light upon the question, and would seem to afford the best means for its solution.

The court below seems to have taken this view, and I think correctly. The damages were fairly ascertainable, both in their character and origin, within the purview of section 3301 of the Civil Code.

This disposes of the alleged errors urged by appellant. The judgment and order appealed from should be affirmed.

VANCLIEF, C., and HAYNES, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

FITZGERALD, J., DE HAVEN, J., McFARLAND, J.