[L. A. No. 18994. In Bank. June 29, 1945.]

THE STEELDUCT COMPANY (a Corporation), Appellant, v. HENGER-SELTZER COMPANY (a Copartnership) et al., Respondents.

Evans, Pearce & Campbell and Daly B. Robnett for Appellant.

Walter Lyon, Derthick, Cusack & Ganahl, Andrew J. Copp, Jr., and H. Dexter McKay for Respondents.

SCHAUER, J.—Plaintiff asks damages for breach by defendants of an exclusive sales agency contract under which defendants had been marketing plaintiff's products. From a judgment for defendants entered pursuant to jury verdict plaintiff appeals, contending, among other things, that the court erred to its prejudice in certain instructions given the jury. We have concluded that such contention must be sustained and the judgment reversed.

In order that the application and effect of the instructions complained of may be more readily comprehended it is expedient, before quoting them, to relate some history of this litigation and portray the relative situations of the parties. Plaintiff The Steelduct Company is an Ohio corporation which produces steel conduit. Defendants are the Henger-Seltzer Company, a partnership (successor to Henger-Seltzer Company, a California corporation), and the partners Henger and Seltzer. On September 1, 1928, the corporate Henger-Seltzer Company entered into an agreement with plaintiff whereby Henger-Seltzer was appointed exclusive agent to sell plaintiff's products in California. The agreement provided, among other things, that "either party to this contract may terminate the same upon ten (10) days written notice of its intention so to do to the other party." On May 31, 1938, at defendants'

request the agreement was amended to appoint defendants exclusive agents for the term of five years thereafter. In February, 1939, defendant Seltzer went to Pittsburgh and there, according to his testimony, "discussed a possible contract" with representatives of Central Tube Company, a competitor of plaintiff. On March 10, 1939, defendants wrote to plaintiff "that we are terminating our agreement with the Steelduct Company on conduit and that we are making other arrangements. We would very greatly appreciate your giving us your disposition on the stocks we have immediately." On March 16, 1939 (the day after plaintiff received this notice), plaintiff telegraphed defendants, "Cannot accept cancellation and expect you to maintain contract." Mr. Collier, president of plaintiff, came to California from Ohio during the week of March 20 and unsuccessfully attempted to persuade defendants to continue their representation of plaintiff. A contract by which defendants were appointed exclusive agents of Central Tube Company for the California territory was executed under date of March 20, 1939. Defendant Seltzer testified that such contract was signed by him on April 1, 1939. On about April 17, 1939, plaintiff notified defendants that it had appointed Tri-State Supply Company its representative in the California territory.

Thereafter plaintiff instituted this action seeking an injunction, an accounting, and damages for breach of contract. The trial court, sitting without a jury, interpreted the contract as permitting cancellation by defendants on ten days' written notice, found that the contract had been so terminated, and rendered judgment for defendants. On appeal the District Court of Appeal (*Steelduct Co.* v. *Henger-Seltzer Co.* (1942), 50 Cal.App.2d 475 [132 P.2d 100], hearing denied) reversed the judgment and held that by the 1938 amendment of the contract "the provision for cancellation . . . was impliedly eliminated."

Upon the going down of the remittitur plaintiff filed its amended complaint seeking damages, an injunction, and an accounting of the amount and value of all products, sold by defendants for Central during the term of defendants' contract with plaintiff. The case was tried before a jury and pursuant to their verdict judgment was entered for defendants on July 1, 1943. Plaintiff's motion for a new trial was denied on September 17, 1943. Plaintiff appeals "from that certain judgment and orders . . . entered . . . on the 20th day

of July, 1943, in favor of defendants . . . and . . . from the orders and rulings . . . entered on or about the 20th day of July, 1943.'' No order or ruling of July 20, 1943, appears in the record or is referred to in the briefs. The attempted appeal from such ''orders and rulings'' is therefore dismissed. We shall treat the appeal as one from the judgment entered on July 1, 1943.

Plaintiff no longer urges its claim for injunctive relief because, as stated by plaintiff's counsel at the opening of the second trial, ''This is a moot question. The five years [the term of the contract] has run.'' Plaintiff's demand for an ''accounting'' was satisfied by defendants' production of invoices showing sales made by defendants for Central during the term of the Steelduct Company contract. The action, therefore, was tried and comes before us as one for damages for breach of contract only.

Among the pertinent admissions, denials, and averments of defendants' answer to the amended complaint are the following: Defendants admit the execution of the agreements of September 1, 1928, and May 31, 1938; they ''admit that on the 20th day of March, 1939, they gave the plaintiff written notice of termination of their said agency contract, but thereafter defendants did continue to represent the plaintiff and use their best efforts so to represent the plaintiff until on or about the 17th day of April, 1939, when plaintiff advised the defendants that it had appointed Tri-State Supply Corporation as its representative in the territory involved, and thereafter defendants commenced to act as agents for the Central Tube Company . . . and sold its products [which, defendants admit, are ''of a like nature and kind'' to plaintiff's products] to many, but not all, of the electrical wholesalers to whom it had previously sold the products of plaintiff''; defendants deny that they breached the contract; they raise the general issue as to the fact and amount of plaintiff's damage. Interspersed among the denials are averments which set up the defense that the sales agency contract was invalid because plaintiff's obligation thereunder was illusory and averments which raise the issue of whether and in what amount plaintiff minimized its damages by appointing Tri-State as its agent in the territory. Set up as separate affirmative defenses are averments that the contract was abandoned by mutual agreement of the parties and that defendants were

justified in sending their notice of termination because plaintiff had previously breached the agreement.

Plaintiff contends that it is the law of the case, established on the prior appeal, that the following defenses cannot be sustained: that the contract was invalid; that because of plaintiff's asserted prior breach defendants were justified in sending their notice of termination; that the contract was mutually abandoned. Defendants urge that only the issue as to the ten-day cancellation clause was determined on the prior appeal; that "the reversal of the decision of the trial court by the District Court of Appeal threw open all other questions involved in the case."

Defendants on this appeal have not stressed their contention that the reversal of the first judgment threw open the questions of the validity of the contract and the plaintiff's asserted breach thereof. For the reasons hereinafter discussed we agree with plaintiff that the doctrine of the law of the case applies to these two defenses.

The question whether the sales agency contract was invalid because of want of mutuality of obligation thereunder, was raised on the first trial.[1] If "the decision relate to a matter which cannot be thus presented under a different aspect— as the construction of a contract . . . —the first decision of the appellate Court is conclusive upon the second trial and second appeal. . . ." (*Leese* v. *Clark* (1862), 20 Cal. 387, 418; *Cole* v. *Merchants Trust Co.* (1921), 54 Cal.App. 392, 397 [202 P. 488].) The question was necessarily determined adversely to defendants on the first appeal. Therefore, such determination, although not express, became the law of the case. (*Eversdon* v. *Mayhew* (1890), 85 Cal. 1, 7-8 [21 P. 431, 24 P. 382]; *Davis* v. *Edmonds* (1933), 218 Cal. 355, 359 [23 P.2d 289]; *Coats* v. *General Motors Corp.* (1938), 11 Cal.2d 601, 607 [81 P.2d 906].) The trial court on the second trial properly ruled,

---

[1]Defendants by their answer to the original complaint (upon which the first trial was had) "deny that any valid or enforcible contract of agency . . . was ever entered into between plaintiff and defendants, in this, that any and all purported agreements between plaintiff and defendants failed to bind the plaintiff to furnish any of its products to defendants except such as the plaintiff might elect, wish or desire to furnish." Defendants by their answer to the amended complaint (upon which the second trial was had) "deny that . . . Henger-Seltzer Co. was granted an exclusive agency to sell plaintiff's products in said territory, and in this connection . . . allege that the only products which they were accorded the right to sell were such as the plaintiff wished or desired to sell in said territory."

"I don't see how I can give you any relief on the mutuality," and instructed the jury "that the defendants herein are precluded by the law of the case now to attack the validity of the contract."

The issue of whether plaintiff first breached the contract, so that defendants were justified in sending their notice of March 10, was also raised on the first trial.[2] The District Court of Appeal said (p. 477 of 50 Cal.App.2d) that defendants' "contention that they had just cause for cancellation is plainly an afterthought. Such cause, if any, was not made the basis for cancellation. Moreover, the evidence does not sustain the contention and there is no finding on it." A decision on a matter properly presented on a prior appeal becomes the law of the case even though it may not have been absolutely necessary to the determination of the question whether the judgment appealed from should be reversed. (*Westerfeld* v. *New York Life Ins. Co.* (1910), 157 Cal. 339, 345 [107 P. 699]; *People's Lumber Co.* v. *Gillard* (1907), 5 Cal.App. 435, 437-439 [90 P. 556].) Defendants do not claim that they could have introduced evidence on this issue differing in any respect from the evidence adduced at the first trial. Therefore, the ruling of the District Court of Appeal that the evidence was legally insufficient to sustain such contention of

---

[2] The contract provided that plaintiff "shall have full and complete determining power as to both the list and net sales prices to be charged by the said Principal through its said Agents."

The answer to the original complaint alleged that plaintiff in November or December, 1938, breached an implied covenant to fill orders obtained by defendants "at the prevailing prices in the territory involved."

The answer to the amended complaint alleged that plaintiff "breached and revoked" any agreement between the parties in November and December, 1938, and January and February, 1939, by refusing "to permit its products to be sold in the territory in competition with products of like character and quality" and by allowing greater discounts to some purchasers in the territory than to others. Defendants' counsel at the second trial took the position that "the contract contained an implied provision that the seller would meet competition in the territory." The trial court ruled, "You go ahead and prove your abandonment and leave all this failure to meet competition out."

The evidence introduced at the first trial is not before us. However, from the allegations of the respective answers and from evidence introduced and offers of proof made by defendants at the second trial it is apparent that the same conduct of plaintiff comprised (according to the answer to the original complaint) a breach in November or December, 1938, of an asserted implied covenant to fill orders at prevailing prices and (according to the answer to the amended complaint) a breach in November and December, 1938, and January and February, 1939, of an asserted implied covenant to meet competitive prices.

defendants, has become the law of the case. (*Estate of Baird* (1924), 193 Cal. 225, 234, 236 [223 P. 974]; *Coats* v. *General Motors Corp.* (1938), *supra,* 11 Cal.2d 601, 606; *Clayton* v. *Schultz* (1941), 18 Cal.2d 328, 332-333 [115 P.2d 446].)

The answer to the amended complaint alleges as an affirmative defense that any agreement between the parties "was mutually abandoned by plaintiff and defendants on or about the 17th day of April, 1939, by means of plaintiff's appointment of Tri-State Supply Corporation as its exclusive agent in said territory, and by defendants' consent thereto." Plaintiff's argument that defendants are precluded by the law of the case from maintaining this defense is based only on the assertions of plaintiff's counsel. The defense was not pleaded in the answer to the first complaint. The opinion of the District Court of Appeal on the prior appeal does not indicate that the defense was there urged. During the second trial plaintiff's counsel stated that the matters relied on by defendants to show mutual abandonment were in evidence at the first trial; defendant's counsel stated that they were not. Plaintiff's counsel refused to bring in the record of the first trial; therefore, there was nothing before the trial court and there is nothing before us to show that such matters were in evidence on the first trial or that the defense was previously urged. The doctrine of the law of the case (in this state) does not extend to the facts or to points of law which might have been but were not presented and determined on a prior appeal. (*Moore* v. *Trott* (1912), 162 Cal. 268, 273 [122 P. 462], and cases there cited; *Cowell* v. *Snyder* (1915), 171 Cal. 291, 298 [165 P. 920]; *Central Nat. Bank* v. *Peck* (1936), 15 Cal.App.2d 512, 514 [59 P.2d 599].) Therefore, the doctrine can have no application to the issue of mutual abandonment.

Upon such issue of mutual abandonment the court instructed the jury, apparently of its own motion, that "if you find from the evidence in this action that the plaintiff and the defendants mutually relinquished and surrendered their rights and obligations under the contract existing between them, then your verdict should be for the defendants" and that "if you find from the evidence that the plaintiff and defendants abandoned the contract existing between them on or about the 17 day of April, 1939, by mutual consent or by mutual agreement, then the defendants were free thereafter to serve a competitor of the plaintiff." Plaintiff contends, in ef-

fect, that the evidence, as a matter of law, is insufficient to show mutual abandonment and hence that it was prejudicial error to give the above quoted instructions. With this contention we agree for the reasons hereinafter set forth.

Defendants rely upon the following evidence to show mutual abandonment: Defendant Seltzer testified that "Following the 10th day of March, 1939, and the 1st day of April of 1939 . . . [defendants] continued to sell Steelduct and conduct business in the same general way as we had before"; that after defendants gave their notice of March 10, they sent in no more orders to plaintiff but continued to sell plaintiff's products out of stock on hand until about the 17th or 19th of April when, at plaintiff's direction, defendants turned over to Tri-State the Steelduct stock. (It will be remembered that defendant Seltzer in February commenced the negotiations with plaintiff's competitor Central which culminated in the execution by Seltzer on April 1, of defendants' exclusive agency contract with Central bearing date of March 20. Seltzer further testified that prior to April 7, and "evidently" prior to April 6, defendants had placed an order with Central.)

Stultz, a customer of plaintiff and defendants since 1930, testified that "in the first part of 1939, March or April, 1939," he withdrew his patronage. According to an offer of proof by defendants on the issue of plaintiff's asserted breach of contract (to which plaintiff's objection was sustained), Stultz' dissatisfaction began in or after November, 1938, and was due to plaintiff's failure to meet competitive prices. The loss of Stultz' patronage contributed to defendants' refusal to continue to represent plaintiff. On about March 27, there was a conference among plaintiff's president Collier, Stultz, and Seltzer. Seltzer testified that "I asked Mr. Stultz in the presence of Mr. Collier, if he had told Mr. Collier that if I would go along, that he would also. He . . . said he would not. . . . It was not a very satisfactory meeting. . . . I told Mr. Collier, after hearing the statement of Mr. Stultz, that I couldn't see any use in our continuing under the circumstances"; that Collier replied that "he couldn't see that we were going to get very far either under the circumstances." Thereafter plaintiff, on about April 17, appointed Tri-State its exclusive agent in the territory.

Defendants further sought to show mutual abandonment by a conversation between Collier and defendant Seltzer on March 24. From their offer of proof and from testimony of

Seltzer pursuant thereto which was stricken on plaintiff's motion, it is apparent that nothing in this conversation supports defendants' position. Such testimony was that Seltzer reiterated defendants' refusal to perform the contract; that Collier said he would try to regain Stultz' business; and that Seltzer "told him [Collier] *if* he could do that we would *probably* continue." (Italics added.)

The evidence plainly fails to show the mutual abandonment alleged by defendants; i. e., "on or about the 17th day of April, 1939 [at a time when defendants were representing a competitor of plaintiff], by means of plaintiff's appointment of Tri-State Supply Corporation as its exclusive agent . . . and by defendants' consent thereto." But defendants now assert that before plaintiff elected to treat defendants' notice of repudiation as a breach defendants impliedly retracted it by their conduct "in continuing to represent the appellant and in negotiating with appellant's president when he came to California," and that "the things the parties said at the meeting [on March 27] amounted to acquiescence in an abandonment of their contract and the things they did after the meeting, completed and carried into effect their agreement to abandon."

▉ If defendants intended to withdraw their repudiation it was incumbent upon them so to advise plaintiff. (*Hulen* v. *Stuart* (1923), 191 Cal. 562, 571 [217 P. 750]; *Ross* v. *Tabor* (1921), 53 Cal.App. 605, 610-611 [200 P. 971].) This they did not do. ▉ Instead, they took part in "negotiations" instituted by Collier, plaintiff's president, for the purpose of inducing them to perform their contract. The only "negotiations" shown by the evidence were those of March 27, when defendants reiterated their refusal to perform. Defendants' offers of proof as to the conversation of March 24 indicate at the most that they offered to withdraw their repudiation on a condition which they had no right to impose: the restoration of Stultz' patronage. (*Cf. Alderson* v. *Houston* (1908), 154 Cal. 1, 14 [96 P. 884].) ▉ Annexing an unwarranted condition to an offer of performance is a refusal to perform. (*Loop Building Co.* v. *DeCoo* (1929), 97 Cal.App. 354, 364 [275 P. 881].) ▉ Furthermore, the fact that the meeting of March 27 was arranged by Collier in an effort to induce defendants to perform indicates that they had not prior thereto retracted their notice of March 10. The fact that defendants continued to sell plaintiff's products out of stock

on hand is in itself of no significance, since it is not shown that this was known to plaintiff or that it signified, or was accompanied by, any intention to market new stock or otherwise resume full performance of the contract.

 Mutual assent to abandon a contract may be manifested by conduct of the parties. (*Treadwell* v. *Nickel* (1924), 194 Cal. 243, 259 [228 P. 25]; *Tuso* v. *Green* (1924), 194 Cal. 574, 582 [229 P. 327]; *Lohn* v. *Fletcher Oil Co., Inc.* (1940), 38 Cal.App.2d 26, 30 [100 P.2d 505].) And if there was any material and competent evidence from which it can be inferred that plaintiff manifested such assent, it was proper to give the questioned instructions and the verdict must be sustained insofar as that issue is concerned. But it does not appear that the above summarized evidence, under any reasonable view, can give rise to such inference.

 The facts that plaintiff's president urged defendants to perform the contract and sought to regain Stultz' business do not prevent plaintiff from treating defendants' renunciation as a breach or indicate that plaintiff agreed to the condition which defendants sought to impose. (*Cf. Alderson* v. *Houston* (1908), *supra,* at p. 7 of 154 Cal.) "Where a party to a contract insists that he is not under legal obligation to perform the contract, and that insistence is coupled with a continuance of his original stand and refusal to perform, the breach is plain, and he cannot successfully take refuge in the plea that he must be excused because the other party urges that the contract be carried out. . . ." (*Tri-Bullion Smelting & Development Co.* v. *Jacobsen* (1916), 233 F. 646, 649 [147 C.C.A. 454]; see *United Press Ass'n* v. *National Newspaper Ass'n* (1916), 237 F. 547 [150 C.C.A. 429].)

 The evidence which seems most nearly to admit of an inference that plaintiff consented to abandonment of the contract is that (according to the testimony of Seltzer, which must be accepted as true in every reasonable implication favorable to defendants) Collier, in reply to Seltzer's statement "that I couldn't see any use in our continuing under the circumstances," said that "he couldn't see that we were going to get very far either under the circumstances." The jury, however, had no right to detach this single statement from its context. It was made at a time when defendants had announced and reiterated their refusal to perform their contract obligations. Only by disregarding uncontradicted evidence and indulging in definitely strained construction can

it be taken to refer to anything more than the plaintiff's efforts to induce defendants to perform their contract obligations.

The application of the rule which requires us to indulge every reasonable construction of evidence in favor of supporting a verdict stops on the word reasonable. The verdict here cannot be sustained on the theory of mutual abandonment and since, under the instructions given, that may well have been the theory on which the jury did arrive at its verdict the judgment must be reversed.

Plaintiff-appellant asserts that ''By reason of the fact that there is no dispute in this case on the right of appellant to recover judgment against respondents, and no valid or legal defense was established against such right and by reason of the fact that there is absolutely no conflict in the evidence as to the amount of damage suffered by appellant,'' this court should direct the court below to enter judgment in plaintiff's favor for the amount of damage assertedly proved. We have no power so to do upon the case shown here, for, although the verdict and judgment may be based on the implied finding of the jury (unsupported by the evidence) that the contract was mutually abandoned, there is no verdict or necessarily implied finding that the plaintiff suffered damage.

The power of an appellate court to ''make findings of fact contrary to, or in addition to, those made by the trial court'' exists only in ''cases where trial by jury is not a matter of right or where trial by jury has been waived.'' (Code Civ. Proc., § 956a; *Tupman* v. *Haberkern* (1929), 208 Cal. 256, 268 [280 P. 970] ; *Kings County Packing Co.* v. *Sunland Sales etc. Assn.* (1929), 100 Cal.App. 126, 134 [279 P. 1036].) Here the trial was by jury as a matter of right. (Code Civ. Proc., § 592.) Moreover, as hereinafter discussed, the asserted lack of conflict in the evidence as to the amount of damage is due to the trial court's erroneous refusal to admit certain evidence.

Since the judgment must be reversed and, inferentially, a new trial had, we note in some detail untenable contentions advanced by each party in connection with the matter of damages.

The measure of damages for defendants' breach of contract is the amount which will compensate plaintiff ''for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom.'' (Civ. Code, § 3300.) Plaintiff is entitled to all the benefits which it would have obtained if the contract had

been performed by both parties (Civ. Code, § 1512) but not to more than it would have received by such performance (Civ. Code, § 3358). Plaintiff cannot recover for loss which by reasonable means it could have avoided (*Alaska Salmon Co.* v. *Standard Box Co.* (1910), 158 Cal. 567, 572 [112 P. 454]; *Ash* v. *Soo Sing Lung* (1918), 177 Cal. 356, 361 [170 P. 843]; *Vitagraph, Inc.,* v. *Liberty Theatres Co.* (1925), 197 Cal. 694, 697 [242 P. 709]), and plaintiff's appointment of Tri-State as its agent was in pursuance of this rule, often called the duty to mitigate damages.

So far as appears from the record before us, examined in the light of the above stated rules, the elements of plaintiff's damages are two: the reasonably necessary expense to which plaintiff was put in procuring a new agent, and the loss of profits (if any profits were lost) caused by defendants' breach. Plaintiff alleged that it necessarily incurred certain expenses in connection with the appointment of its new agent but offered no evidence as to this element of damages. As to the second element of damages—loss of profits—plaintiff alleged that all sales made by defendants for Central "could have, and except for said breach and violation of said contract by said defendants would have, been business and patronage of plaintiff, and that such customers and purchasers would have purchased such products in the same amount, and that plaintiff could have, and would have, made a profit thereon . . . which has been lost to plaintiff, to its damage, solely by reason of said violation of said contract by defendants."

It is plaintiff's theory (adopted by the trial court in certain rulings on the evidence and instructions to the jury) that the fact that defendants made sales of competitive merchandise in the territory furnishes conclusive proof, which defendants are estopped to deny, that such sales could have been made for plaintiff to the same customers and in the same amounts, and, further, that mitigation of damages "is no element of this case" and defendants are estopped to introduce evidence thereof. This theory ignores the fundamental rules as to damages for breach of contract which are stated above.

In support of its theory, plaintiff relies upon certain language in *Schiffman* v. *Peerless Motor Car Co.* (1910), 13 Cal. App. 600 [110 P. 460], and in *Hacker etc. Co.* v. *Chapman V. Mfg. Co.* (1936), 17 Cal.App.2d 265 [61 P.2d 944]. In each of those cases *defendant principal,* in violation of an exclusive

sales agency contract, sold its products in the territory reserved to *plaintiff agent*. In the Schiffman case it was held that evidence that defendant principal made such sales in violation of contract was sufficient to support a finding that plaintiff suffered damages. The court said (p. 604 of 13 Cal.App.), "We are not informed by counsel for either party upon what theory the balance of $3,995, for which judgment was given, was reached." In the Hacker case the amount for which judgment was given "was arrived at by applying the percentage of profit which plaintiff had realized upon its own sales during the life of the contract to the total amount of sales made by defendant in alleged violation of the agreement, the theory of the court resting upon the assumption that plaintiff would have made the sales in the usual course of its business, and at its usual profit, had it been allowed to do so. The basis adopted by the court for computing the damages was a correct one if the assumption was justified by the evidence" (p. 267 of 17 Cal. App.2d). The opinion discloses that the sales made by defendants in violation of contract were at such low prices that plaintiff could have made no profit thereon, and continues: "Defendants were allowed to prove the conditions under which their sales were made in an effort to show that plaintiff could not have obtained higher prices. The court found, however, that plaintiff could have made such sales and defendants do not question this finding except by their assertion that plaintiff would have had to sell at the same prices which they received." (Pp. 270-271 of 17 Cal.App.2d.) The District Court of Appeal held that the evidence was sufficient to support the attacked finding.

In the Schiffman case the court further stated (p. 604 of 13 Cal.App.) that defendant principal was estopped "to deny that plaintiff would have made sale of these machines but for its violation of the contract." And in the Hacker case the court stated (p. 271 of 17 Cal.App.2d) that "Any uncertainty as to the amount of profit that plaintiff might have made upon the sales results solely from the arbitrary prices fixed by defendants upon the goods which they sold secretly. Defendants having taken the matter into their own hands and having refused plaintiff an opportunity to make the sales or assist in making them cannot be heard to say that the arbitrary prices which they fixed were the highest that could have been obtained. They cannot profit by their own wrong."

From the last quoted statements plaintiff, in effect although

not in terms, draws the proposition that defendants here (who were agents, not principals), because they breached their contract, estopped themselves to introduce competent evidence on the issue of damages. We do not believe that the factual bases of those cases afford true parallels or that the language used is susceptible of such meaning.

The courts have often noted the difficulty of proving the amount of loss of profits. Where the promisor by his wilful breach of contract has given rise to this difficulty it is proper to require of the promisee only that he show the amount of damages with ''reasonable certainty'' and to resolve uncertainties against the promisor. (*Schumann* v. *Karrer* (1920), 184 Cal. 50, 57 [192 P. 849], and cases there cited and quoted from; *Hollywood Cleaning & P. Co.* v. *Hollywood L. Service* (1932), 217 Cal. 131, 134 [17 P.2d 712]; *Erskine* v. *Marchant* (1918), 37 Cal.App. 590, 593 [174 P. 74]. So the promisee, in order to furnish a reasonable basis for estimating the amount of such profits, may introduce evidence of past profits received by the promisee under the contract (*Hollywood Cleaning & P. Co.* v. *Hollywood L. Service, supra*; *Caspary* v. *Moore* (1937), 21 Cal.App.2d 694, 699 [70 P.2d 224]) or, occasionally, of profits in a similar enterprise (*Sanford* v. *East Riverside I. Dist.* (1894), 101 Cal. 275, 280 [35 P. 865]) or of profits made by the promisor in violation of the contract (*Gregory* v. *Spieker* (1895), 110 Cal. 150, 155 [42 P. 576, 52 Am.St.Rep. 70]) or of sales, made after breach of contract, on which, had they been made under the contract, the promisee would have received a profit (*Schiffman* v. *Peerless Motor Car Co.* (1910), *supra*, 13 Cal.App. 600; *Erskine* v. *Marchant, supra; Hacker etc. Co.* v. *Chapman V. Mfg. Co.* (1936), *supra*, 17 Cal.App.2d 265, 267). In the last-mentioned situation it may be that the profits shown as a basis of estimation would not have been gained by the promisee; that is a matter which, because of the promisor's breach, cannot be determined. In such a case the reasonable basis of estimation constituting the best and most convincing evidence of damages of which the situation admits is properly accepted as sufficient proof of damages. (*Friedman* v. *McKay Leather Co.* (1919), 179 Cal. 566, 570 [178 P. 139].)

Plaintiff introduced evidence (invoices and commission sheets of defendants) of the total amount of sales made by defendants from the time of their appointment as Central's

agents until the expiration of the term of defendants' contract with plaintiff. Plaintiff's president, Collier, computed and testified to the amount of profit plaintiff assertedly would have received if all such sales (except certain sales made at unusually low prices, hereinafter discussed) had been made for plaintiff at the prices shown on the defendants' records. Defendants admitted that the products of plaintiff and of Central were "of a like nature and kind." Seltzer testified that for a time during the period in question there was a "tremendous demand" for such products. Collier testified that plaintiff could have furnished all the material sold by defendants for Central in addition to the material which was sold by plaintiff's new agent, Tri-State. At the time of defendants' breach and prior thereto there were about 15 sellers of steel conduit (including the plaintiff) in the territory; these sellers competed for the business of some 30 or 40 customers.

Plaintiff, it will be remembered, was not seeking to furnish a basis for estimation of profits which it would have received if defendants had performed their contract. It was not seeking to show that if defendants had devoted their diligent efforts to selling plaintiff's products as they had agreed to do, they could have made sales in the same amount even though not to the same customers. Plaintiff alleged, sought to prove, and now argues that it did prove, that every sale which defendants made for Central would have been made for plaintiff if defendants had performed their contract.

 The facts that defendants (as they admitted) made sales of substantially similar competing products in the territory covered by their contract with plaintiff and that (as defendants admitted) some of those sales were to customers to whom they had formerly sold plaintiff's products, in the light of the other evidence above summarized, are sufficient to show that defendants could have made the sales for plaintiff. As above indicated, the defendant who wilfully breaches his contract "cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of," or method of proving, damages. (*Schumann* v. *Karrer* (1920), *supra,* 184 Cal. 50, 57, and cases there cited.)

But "defendants deny that any of the merchandise which it has sold for the manufacturers now represented by it, could have been sold for the plaintiff." This denial raised a simple issue of fact. Plaintiff undertook to show that every sale defendants made for Central was a benefit which plaintiff

would have received if defendants had not breached their contract. It was competent for defendants to show that in fact there was no loss, or not that amount of loss, of benefits to plaintiff. A sale of Central tubing to a customer who would not have purchased plaintiff's tubing if solicited by defendants deprived plaintiff of no benefit. (*Cf. Continental Car-Na-Var Corp.* v. *Moseley* (1944), 24 Cal.2d 104, 113 [148 P.2d 9].)

Certain sales made by defendants for Central were at such low prices that plaintiff would have made no profit thereon. Plaintiff's president computed and testified to the amount of profit plaintiff assertedly would have received on such sales, had they been made for plaintiff at "the selling price that we had in effect at that time." Although defendants do not attack the sufficiency of the evidence in this regard, plaintiff failed to show that sales of its substantially similar competing merchandise were made at the price adopted by plaintiff's president as the basis of his computation. Plaintiff during the course of its argument also asserts that the fact that defendants made sales of competitive merchandise furnishes *sufficient* proof that those sales could have been made for plaintiff at "list prices," and that *the law will presume* that the sales could have been made at "the usual price"; however, plaintiff introduced no evidence as to what was the usual price or the list price at the time of the sales in question, and no evidence that plaintiff (through its agent Tri-State) at such time was able to make sales at "list" or "usual" price or at all. A showing that plaintiff sold its substantially similar products at "the selling price" or at list or usual price, in the light of the other evidence above recited and since plaintiff under the contract with Henger-Seltzer had full power to determine its sales price, would support an inference that the sales could have been made by defendants at such price. But no presumption arises from such a showing and it would be competent for defendants to attempt to overcome this prima facie showing by evidence that the purchasers would not have bought conduit except at the low price at which defendants sold.

Plaintiff, as above suggested, might have introduced the evidence of the amount of defendants' sales for Central in violation of the contract to provide a reasonable basis for estimating the amount of profit plaintiff would have received if defendants had performed, rather than undertaking the

more difficult showing that every sale made for Central could have been made for plaintiff. If plaintiff chose the former mode of showing loss of profits, defendants might introduce evidence to show that plaintiff's basis of estimation was inaccurate: e. g., that plaintiff's product was less readily marketable than Central's and that market conditions were such that sales of conduit could be made only at the low prices at which Central's products were sold. (*Cf. Wiley* v. *California Hosiery Co.* (1893), 3 Cal.Unrep. 814, 823 [32 P. 522]; *Hacker etc. Co.* v. *Chapman V. Mfg. Co.* (1936), *supra,* 17 Cal.App.2d 265, 270.)

We make the above observations, not because defendants have argued persuasively that they have been harmed because the case was tried on the theory that they were ''estopped'' to introduce evidence of the types suggested, but because such theory is so greatly at variance with the code law of this state as to damages.

 Defendants assert that plaintiff ''offered no proof as to the results accomplished through the new agent so there is a vital defect'' in plaintiff's proof of damages. In this defendants are mistaken. The burden of proof is on the party whose breach caused damage, to establish matters relied on to mitigate damage. (*Utter* v. *Chapman* (1872), 43 Cal. 279, 284; *Hancock* v. *Board of Education* (1903), 140 Cal. 554, 562 [74 P. 44]; *Vitagraph, Inc.,* v. *Liberty Theatres Co.* (1925), *supra,* 197 Cal. 694, 699; *Cope* v. *Sutter County* (1929), 206 Cal. 445, 455 [274 P. 750]; *Andersen* v. *La Rinconada Country Club* (1935), 4 Cal.App.2d 197, 201 [40 P.2d 571]; *De La Falaise* v. *Gaumont-British Picture Corp.* (1940), 39 Cal.App. 2d 461, 469 [103 P.2d 447]; *cf. Marconi W. T. Co.* v. *North P. S. Co.* (1918), 36 Cal.App. 653, 655-656 [173 P. 103].)

It was said in *Spitzer* v. *Pathe Exchange, Inc.* (1933), 132 Cal.App. 612, 619 [23 P.2d 308], that ''If by reason of any peculiar circumstances it was impossible by reason of the nature of the commodity or the nature of the market for the plaintiffs to have obtained another sales agency, the plaintiffs should have pleaded and proved the facts. The burden was on them.'' This statement has no application to the present case. It proceeds on the assumption that another equally efficient agent can be obtained. (See 5 Williston, Contracts, § 1362A, p. 3823.) There is no basis for such an assumption in this case. Plaintiff alleged in its amended complaint that defendants had represented it for more than ten years and had built up and

maintained friendly personal contacts with customers during that period. The repudiation by defendants of their agreement to represent plaintiff and the breach of their covenant not to sell competing merchandise might well be expected, in the ordinary course of things, to have an injurious effect on the volume of plaintiff's business; even if (as was the case) plaintiff was able to procure a new sales agent without great delay, it is reasonable to suppose that such agent's efforts might be less profitable than the efforts of defendants.

■■■ Despite their argument that plaintiff should have proved that it minimized its damages, defendants at the trial offered to show, in reduction of damages, the amount of profits made by Tri-State for plaintiff. This evidence was improperly rejected. Defendants assert that such evidence would have shown that plaintiff's profits were greater during the years when it was represented by Tri-State than during the years when it was represented by defendants, and so would tend to show that defendants' breach did not cause any loss of profits to plaintiff.

The unsoundness of plaintiff's contention that this evidence was properly rejected because, as stated by plaintiff's counsel, defendants "are estopped to set up or offer such proof," has been shown.

Plaintiff further contends that this evidence as to mitigation of damages was properly excluded because defendants did not plead the facts on which they sought to rely. It was said in *Vitagraph, Inc.,* v. *Liberty Theatres Co.* (1925), *supra,* 197 Cal. 694, 699-700, that "It is generally held to be the duty of the defendant to plead the facts in mitigation of damages if he would rely thereon." (See, also, *Ramsay* v. *Rodgers* (1923), 60 Cal.App. 781, 785 [214 P. 261].) This contention of plaintiff (which defendants do not attempt to answer directly) is without merit. The evidence was admissible under defendants' allegation "that the plaintiff has been adequately represented in the whole of said territory since the 19th day of April, 1939, and that the sales of said agent so appointed have supplied the demand for plaintiff's product in said territory."

■■■ Plaintiff next asserts that the profits gained by plaintiff through the efforts of Tri-State are not available in reduction of damages because plaintiff has shown that such profits could have been gained by plaintiff even if defendants had performed their contract. (See *Nuckolls* v. *College of Physi-*

*cians* (1907), 7 Cal.App. 233, 236 [94 P. 81] ; *Wendt* v. *Smith* (1920), 50 Cal.App. 233, 237-238 [194 P. 736].) Plaintiff refers to no evidence, and we find none in the record, which tends to show that defendants, if they had performed their contract, could have made sales for plaintiff in an amount equal to all sales made by them for Central and all sales made by Tri-State for plaintiff. The proposition on which plaintiff relies plainly can have no application here. The contract which defendants breached was an exclusive agency contract; plaintiff could not have received the benefit of another agent's services if defendants had performed.

Other asserted errors in instructions complained of need not occur on a new trial and hence are not here discussed.

The attempted appeal from ''the orders and rulings . . . entered on or about the 20th day of July, 1943,'' is dismissed. The judgment is reversed and the cause is remanded for a new trial.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

EDMONDS, J.—I concur in the judgment upon the ground that the instruction to the jury upon the issue of the abandonment of the contract was prejudicially erroneous. That determination is decisive of the appeal.